STATE OF MISSOURI, TO USE OF COUNTY OF ST. LOUIS, Respondent, *v.* P. P. DAILEY ET AL., Appellants.

### June 12, 1877.

1. Where an officer who, under the law, is required to pay into the county treasury at once any fees by him collected, in regard to such moneys there is no continuing trust, and when an official report is by him made of the amount due the county, and such amount is demanded of him by the proper county officer, the statute of limitations begins to run from the date of such demand. *Semble* that a right of action on his official bond against such officer and the sureties on such bond, for failure to pay over such moneys, accrues upon each collection as soon as made.

2. Where an officer's bond is conditioned that he will pay over all moneys received by virtue of his office, the sureties are not liable for moneys by him received after he is out of office; such moneys not being received by virtue of his office.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

WILLIAM PATRICK, for appellants: A collecting agent must pay over the moneys he collects as soon as he receives them. — *Lyle* v. *Murray*, 4 Sandf. 593; *Turney* v. *Cochran*, 1 Watts & S. 119; *Berry* v. *Pierson*, 1 Gill, 248; *Lilly* v. *Hoyt*, 5 Hill, 395; *Green* v. *Johnson*, 3 Gill & J.

395. Where the duty of the agent is to collect and pay over, the statute begins to run upon demand and refusal. — *Murray* v. *Coster*, 20 Johns. 565; *Taylor* v. *Spears*, 8 Ark. 429; *Lever* v. *Lever*, 1 Hill (S. C.), 67; *Topham* v. *Braddick*, 1 Taun. 573; *Jayne* v. *Mickey*, 55 Pa. St. 260; *The State ex rel.* v. *Minor*, 44 Mo. 373; *Kirk* v. *Sportsman*, 48 Mo. 383. The statute begins to run when the principal can or has obtained knowledge that he has a cause of action. — *Kane* v. *Bloodgood*, 7 Johns. Ch. 122; *Warnburse* v. *Kennedy*, 4 Desau. 479. A surety on a bond is not liable for acts of his principal done after the bond has expired. — *Moss* v. *The State*, 10 Mo. 338; *The State* v. *Grimsley*, 19 Mo. 178.

BURRUS & VAN WAGONER, for respondent: "If there be a general or continual agency, the statute of limitations will not begin to run until the termination of the agency." — *Paris* v. *Cobb*, 5 Rich. Eq. 450, 470; *Hopkins* v. *Hopkins*, 4 Strobh. Eq. 207. The statute does not begin to run until the expiration of the term of office for which a public officer is elected. — *The State* v. *Ferguson*, 9 Mo. 288. Nor until the right of action becomes complete. — *Robsuhl* v. *Lark*, 35 Mo. 316; *Fearle* v. *Lewis*, 13 Mo. 468.

LEWIS, P. J., delivered the opinion of the court.

This is a suit against principal and sureties on the official bond of defendant Dailey, as clerk of the Criminal Court of St. Louis County. The penal sum in the bond is $10,000, and among the conditions it is stipulated that the principal "shall faithfully perform the duties of his office, and pay over all moneys which may come to his hands by virtue of his office." The issues made upon the breaches assigned cover the defendant Dailey's failure to pay over large sums of money received by him during his term of office and after its expiration. The cause was tried before the court, sitting as a jury, upon an agreed statement of facts. From

this it appeared that Dailey's term of office commenced January 9, 1867, and ended January 3, 1871; that during his term he collected from the State, for fees of his office as clerk, $8,349.88, and for fees of the circuit attorney, jailer, and jail physician, $46,520.04, making in all the sum of $54,869.92; that of this sum he was allowed to retain $15,680.42 for his own salary and compensation of his deputies, and the whole amount of his payments to the county was $28,829.40. This left a deficit of $10,360.10. All these collections were made prior to November 23, 1870.

On April 12, 1870, a committee of investigation, appointed by the County Court, reported a balance due from Dailey of $10,166.45. Payment of this sum was thereupon demanded by the county, through its proper officers, and was refused.

Early in the month of December, 1870, upon a statement procured by the county auditor from the auditor of the State, another official report was made to the County Court, showing a balance against Dailey of $10,360.10. This sum was thereupon in like manner demanded of Dailey, and payment was refused.

On January 10, 1871, Dailey having gone out of office on the third day of the same month, a certificate of indebtedness for $2,378.10 was issued by the state auditor in favor of Dailey, as clerk of the Criminal Court, and on February 4th a warrant was issued therefor, upon which he received the money on February 6th. This sum, also, was for fees which had accrued during Dailey's term of office. Suit was commenced December 29, 1873. The court rendered judgment against the defendants for $10,000, the penalty in the bond.

Two questions, only, are presented in the case: First, was the action barred by the statute of limitations? Defendants claim that it was so, because the right of action accrued either immediately upon Dailey's collections, respectively, or upon the county's demand of payment and his refusal.

All these events were more than three years before the commencement of the suit. Plaintiff contends that the statute did not begin to run until the expiration of Dailey's term of office. The second question is whether the defendants can be held at all responsible on account of the money collected by Dailey after he went out of office.

In order to determine when the statute of limitations begins to run in favor of a collecting agent, the precise relation in which he stands to his principal must first be understood. If there be an express and continuing trust, no right of action will accrue until that is ended by the terms of its creation or by the acts of the parties. An agent or trustee having authority to collect and reinvest the funds of his principal or *cestui que trust* is in no default by reason of his collections merely, so long as that authority remains. His retention of the moneys collected until their reinvestment is entirely consistent with the rights of his principal. No adverse relation has arisen between them, nor any reason upon which the principal might found a suit. If he were to sue for a wrongful detention of the money, it would be a complete answer that the detention was by his express consent and agreement. But if the authority be limited to a certain period, or otherwise expire by its own terms, or by a demand of the principal, a new and adverse relation then arises between the parties. The possession of the agent or trustee is no longer consistent with the rights of the principal or *cestui que trust*, and the latter may enforce his rights by suit if such inconsistent possession be continued. The right of action thus arises upon the termination of the trust by the demand made, by expiration of its limited period, or otherwise, as the case may be. So, if one consign goods to a factor to be sold, and the factor, failing to sell, holds them for an indefinite length of time, this possession being consistent with ownership in another, and with all the rights of the owner, no action can be founded thereupon until demand made by such owner and a refusal to return. The

principle is apparent in the numerous decisions affecting land titles. So long as the possession is that of a tenant, or is otherwise consistent with the title of the owner, it cannot be made available under the statute of limitations. But from the moment when the possession becomes adverse to the owner his right of action accrues, and the statute of limitations begins to run.

If, however, there is no continuing trust, — the agent having power to collect, only that he may pay over the money immediately to the owner, — then the adverse relation arises at once upon the fact of collection. It would logically follow that the right of action and the running of the statute will supervene at the same time. But the risks of transmission, the necessity for special instructions, and other incidents, will generally postpone these consequences for a longer or shorter period, and sometimes until demand made. In the latter event, it by no means follows that until a demand no cause of action accrues, so that the statute does not begin to run. The principal cannot, by omitting to make the necessary demand, suspend the operation of the statute for an indefinite period. Upon receiving notice of the collection, he must make the requisite demand within a reasonable time ; and if he omit to do so, he puts the statute in motion, nevertheless. *Lyle* v. *Murray*, 4 Sandf. 594 ; *Stafford* v. *Richardson*, 15 Wend. 305. To like effect is the opinion of this court in *Spuryer* v. *Hardy*, decided in the present term. One or two citations from a number of authorities collected by defendants' counsel will clearly illustrate these general principles.

In *Green* v. *Johnson*, 3 Gill & J. 395, the court said : " As soon as a trust ceases to be a continuing, subsisting trust, or expires by its own limitation, or is put an end to by the act of the parties, if it be a fit subject for a suit at law, a cause of action arises and the statute of limitations begins to run." * * * " There is nothing to show that it was the intention of Grant and Bell that the latter should

keep possession of the money received for the purpose of investment, or any other appropriation. On the contrary, we conceive that there was an implied engagement, a legal obligation, on the part of Bell, when payment was made to him, without delay to pay it over to Grant, and not to retain it in his hands without object; that, having failed to do this, Grant had an immediate right of action against him; and that there was nothing in the relations of the parties which could postpone the operation of the act of limitations."

Said Chancellor Kent, in *Kane* v. *Bloodgood*, 7 Johns. Ch. 128 : " In a case of trust upon money, where there has been no demand and refusal, the possession of a fund is consistent with the title of the *cestui que trust*, and the statute is no bar. But after a refusal to pay, the possession becomes adverse, and it is just as reasonable that the statute should run, and bar the party who is apprised that his right is denied, and yet sleeps on that right, as that it should bar the party who has knowledge of the fraud and neglects his remedy." See, also, *Jayne* v. *Mickey*, 55 Pa. St. 260.

In *Hopkins* v. *Hopkins*, 4 Strobh. Eq. 207, cited by plaintiff's counsel, there is nothing to interfere with this doctrine. It is there held that " if there be a general or continuing agency, the statute will not commence to run until the termination of the agency; but if the agency be special, and relate to isolated transactions, in regard to which the agent received special authority from his principal to act for him in those particular matters, then the statute of limitations will commence to run from each of those several transactions," etc. The same may be said of *Parris* v. *Cobb*, 5 Rich. Eq. 450. There was no occasion, in either case, to pass upon the effect of a demand, in terminating the agency of one having a general authority to make collections.

The authorities are very numerous in which it is held that, in cases of agency simply to collect and pay over, the

statute begins to run from demand and refusal. *Taylor* v. *Spears*, 8 Ark. 429; *Lever* v. *Lever*, 1 Hill (S. C.), 67; *Topham* v. *Braddick*, 1 Taun. 573; *Benton* v. *Craig*, 2 Mo. 198.

This review of the distinctions everywhere recognized is rendered pertinent by the plaintiff's argument, to the effect that defendant Dailey's office was a trust, upon which no breach could arise, and, consequently, no right of action, until the expiration of his term. An application of the principles underlying the rules referred to will show that the position is untenable.

The statute regulating the duties of the clerk in this connection (Wag. Stat. 351, sec. 17), after directing in what manner the judge and circuit attorney shall examine and adjust the fee-bills, provides that "they shall certify to the state auditor or county clerk, accordingly as the State or county is liable, the amount of costs due by the State or county on the said fee-bills, which shall be delivered to the clerk, to be collected without delay, and paid over to those entitled to the fees allowed; and any clerk failing to collect said fees, or having collected them, and shall refuse to pay the same on demand, shall be subjected to the penalties prescribed in the preceding section, to be recovered in like manner."

In the agreed statement upon which this cause was tried it is admitted that "it was the duty of said Dailey, upon the receipt of any fees collected by him, to pay the same immediately into the treasury of St. Louis County, for the use of said county," etc.

It is thus manifest, from both the statute and the agreed statement, that, as to these collections, no continuing trust was ever reposed in Dailey. He was not to reinvest or to retain the money for any purpose whatever, or for any time, however short. He was simply to collect and pay over. If he failed to pay over, the adverse relation between him and the county arose at once, by operation of

law.  Each collection was an isolated transaction, implying its distinctive duty of immediate payment, without reference to the transactions which were to follow.  In view of the stringent exactions of the statute, it might not be too much to say that the right of action in the county accrued immediately upon each collection.  But, for the purposes of this case, it is sufficient to find it unquestionably true that the demand and refusal, which occurred early in the month of December, 1870, fixed the right of action and the running of the statute from that time.  There is little analogy between the liability here under consideration and that of a sheriff to pay over money collected upon execution.  It has been held that the sheriff is not bound to pay over until the return term of the execution, which commands him to have the debt, damages, and costs before the court to which the writ is returnable.  But if the parallel were perfect, the rule, as settled in Missouri, would lead to the same result.  In *The State* v. *Minor*, 44 Mo. 373, it was held that "the cause of action on the bond of a sheriff for failing to account for moneys collected by him does not accrue, so as to put in motion the statute of limitations, until there has been either a *demand of payment* by the partes in interest, or until the officer has made a proper return or report, to the court ordering the sale, of the moneys realized therefrom."

The Circuit Court, in the giving and refusing of instructions, disregarded both the duty of payment upon collection, and the demand and refusal, and held that the right of action and the operation of the statute of limitations commenced upon the expiration of defendant Dailey's official term.  This was error.

As to the money received by Dailey when no longer in office there could be no liability on his official bond.  It was not received "by virtue of his office," for office he had none.  If he could collect by that right a month after his term, he might do so with equal propriety twenty years later.  The sureties would thus be held to guarantee his

conduct for the remainder of his life, instead of a definite period fixed by law and by the terms of their bond. *Moss* v. *The State*, 10 Mo. 338 ; *The State* v. *Grimsley*, 19 Mo. 178.

All the judges concurring, the judgment is reversed and the cause remanded.