# W. C. BROWNING *et al.* v. CHAS. H. DEFORD.

### (Filed Feb. 11, 1899.)

1. FRAUDULENT CONVEYANCES — *Antecedent Creditors.* An antecedent creditor who knows that his debtor procured goods and merchandise by fraudulent means, cannot, by a chattel mortgage, secure a lien on such fraudulently procured goods, adverse to the innocent vendors of such goods.

2. CHATTEL MORTGAGE—*Fraud of Grantee.* An antecedent creditor who· knows that his debtor has procured goods and merchandise by fraudulent means, and when the sale of such goods is partially induced by his own fraud, deceit and misrepresentation as to the· credit of his debtor, cannot, by a chattel mortgage, secure a lien on such fraudulently procured goods, adverse to the innocent vendor.

3. BONA FIDE PURCHASERS—*Who are not.* The protection of a purchaser of goods from a fraudulent vendee is based upon and he is recognized as a *bona fide* purchaser upon the ground only that the fraudulent purchaser has a voidable or defeasible title which, before its annulment by the vendor, the defrauding purchaser can transmit to a *bona fide* purchaser, who is without knowledge or notice of the fraud, and who has parted with value therefor; but one who buys w'th notice or knowledge of the fraud of his vendor in obtaining the· property, is not a *bona fide* purchaser, and is liable, not only to· lose the goods, but, if he has parted with them, he is liable to pay their value.

4. GOODS FRAUDULENTLY OBTAINED — *Mortgage of, When Void.* A mortgage of goods fraudulently obtained is absolutely void if the· mortgagee participated in the fraud by which they were obtained, or before the making of the mortgage had knowledge that the mortgagor had fraudulently obtained the same. Where in an action by mortgagees against a sheriff to recover the value of the· mortgaged property seized under attachments against the mortgagor, in suits by his creditors, the defendant establishes the· fact that such goods were fraudulently obtained from the attachment creditors by the mortgagor, and that the mortgagees participated in the fraud by which such goods were obtained, or before the making of the mortgage had knowledge that such goods were· so fraudulently obtained, the fraudulent character of the mortgage· and its invalidity is established.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*John W. Shartel,* for plaintiffs in error.

*Cotteral & Hornor,* and *Joseph Wisby,* for defendant in error.

Action by Henry W. King & Co., Tootle, Wheeler & Motter, Central National Bank of Topeka, Kansas, the Bank of Topeka, and A. H. Vance, as mortgagees, against Charles H. DeFord, Sheriff of Oklahoma county, to recover the value of a stock of goods seized by said DeFord and sold under writs of attachment issued against the property of the firm of W. F. Wolfe & Son, in suits instituted by general creditors of said firm. From a judgment for the defendant, plaintiffs appeal. Affirmed.

Opinion of the court by

TARSNEY, J.: On December 15, 1890, the plaintiffs in error took from W. F. Wolfe & Son a chattel mortgage upon a stock of goods and merchandise, situated in Oklahoma City, and went into immediate possession of the same, by one W. L. Harvey, as their agent. The mortgage was obtained by A. H. Vance, one of the plaintiffs in error, acting for himself and as agent and attorney for all the other plaintiffs in error, and the property being placed in his possession by Wolf & Son, was by him turned over to W. L. Harvey, who was his brother-in-law, to sell and dispose of for said plaintiffs in error. On the same day, certain of the creditors of Wolfe & Son commenced attachment proceedings and caused writs of attachment to be levied on the mortgaged property. Defendant, DeFord, as sheriff of Oklahoma county, levied

the attachments, dispossessed the agent of the mortga-
gees, and the property was afterwards sold by the defend-
ant under an order of sale from the district court, made in
the attachment proceedings. The mortgagees each
brought a separate suit against the defendant for the
conversion of the property, and on June 29, 1891, a stipu-
lation was made whereby the several suits of the plain-
tiffs in error should be consolidated into one action,
wherein the plaintiffs in error should be plaintiffs; and in
accordance with such stipulation, said several actions
were consolidated by order of court, and a consolidated
petition was filed therein alleging a separate indebtedness
due to the several plaintiffs from W. F. Wolfe & Son, the
making a chattel mortgage by Wolfe & Son to secure
the same, the delivery of the mortgaged property there-
under to the agent of the plaintiffs, its seizure and conver-
sion by the defendant, and asking judgment for the value
of the several interests of the plaintiffs in the property
converted.

To this petition the defendant, DeFord, answered, just-
ifying the seizure of the goods under various writs of at-
tachment placed in his hands for service.

The principal ground of defense relied upon by the de-
fendant was stated in the sixth paragraph of the answer,
in which he alleged substantially that in the year 1890,
and prior thereto, W. F. Wolfe, Louis H. Wolfe and Fred-
erick W. Wolfe were engaged in mercantile business in
Topeka, Kansas, as partners, under the firm name of W.
F. Wolfe & Sons; that prior to said date plaintiffs, pre-
tending to be creditors of said firm, had taken notes of
said firm for the amount of their indebtedness claimed in
this action; that some of said notes were signed by D. A.

Harvey, others by John T. Clark, and all of said notes were signed by plaintiff A. H. Vance; that Clark, Harvey and Vance signed said notes as sureties thereon; that A. H. Vance is a brother-in-law of Louis H. Wolfe, Harvey is an uncle of said Wolfe, and Clark is the father-in-law of said Wolfe; that the stock in trade of said Wolfe & Sons, at Topeka, consisted of remnants and broken lots of merchandise, odds and ends of a run-down stock of small commercial value; that it was the wreckage of a former failure of said Wolfe & Sons; that at said time Wolfe & Sons were utterly insolvent and known to be so by all the plaintiffs; that having no means to pay the indebtedness on said notes and knowing that if the same should be paid it would have to be paid by Vance, Harvey and Clark, Wolfe & Sons combined, conspired and confederated with Vance, Harvey and Clark, and formed and entered into a scheme and combination with said Harvey, Vance and Clark, for the purpose of protecting and relieving them from their surety obligations on said notes; that pursuant to said conspiracy, Wolfe & Sons removed their business from Topeka to Oklahoma Territory, and there opened under the name of W. F. Wolfe & Son; that W. F. Wolfe was the owner of real estate in Topeka of the value of $10,000, which he conveyed to the wife of A. H. Vance, so that the same should be beyond the reach of creditors; that L. H. Wolf was the owner of certain real estate in Topeka of the value of $10,000, which he conveyed to his wife for the purpose of placing it beyond the reach of creditors; that when said firm moved to Oklahoma City, L. H. Wolfe became the owner of real estate at Oklahoma City of the value of $12,000, which he conveyed to Georgiana H. Wolfe, his mother; that the deeds for said several pieces

of real estate were withheld from record so that the title thereof of record stood in the names of W. F. Wolfe and L. H. Wolfe, for the purpose of enabling them to carry out and consummate the conspiracy aforesaid, whereby they could use such real estate as a basis of credit upon which to obtain goods and merchandise from wholesale merchants, which goods and merchandise, when so obtained, should be conveyed by mortgage to the holders of said outstanding notes, and which, being appropriated to the payment of said notes, would release the said relatives of said Wolfe & Son, viz: Harvey, Vance and Clark, from their obligations as sureties on said notes, from which obligations they were financially responsible; that in pursuance of said plan and scheme, Wolfe & Son, after they opened business in Oklahoma City, made property statements to divers wholesale merchants, including the attachment plantiffs, for the purpose of obtaining credit, which property statement was as follows: "Stock in Oklahoma City, $17,000; Guthrie stock, $35,000; real estate in Oklahoma City, $12,000; Topeka real estate, $20,000, making total firm assets, $84,000; total liabilities, $27,000." That it was a part of said plan and conspiracy that when a large stock of goods had been purchased by them, by means of said false and fraudulent statement, the deeds to said real estate, which had previously been made to Mrs. A. H. Vance, Mrs. L. H. Wolfe and Georgiana H. Wolfe, and which had remained unrecorded for three years and a half, for eight months and for six months, respectively, should be placed upon record and the goods and merchandise obtained upon such false and fraudulent property statement should be conveyed by mortgage to the plaintiffs in error, in satisfaction of said notes;.

that said Wolfe & Son, in pursuance of such conspiracy and by means of said false and fraudulent property statement, did purchase and obtain credit for $19,000 worth of goods from said attaching creditors and others; that immediately upon obtaining such goods and credits, the real estate deeds aforesaid were placed upon record and the chattel mortgage under which plaintiffs in error claimed, was executed, and the goods so fraudulently purchased delivered to them under such chattel mortgage. Defendant alleged that said goods were so fraudulently obtained from said attachment creditors; that A. H. Vance, one of the plaintiffs in error, acting for himself and as agent and attorney for the other plaintiffs in error, not only had full knowledge that such goods were wrongfully and fraudulently obtained from said attachment creditors, but that he actively participated in obtaining the same; that he had full knowledge that the mortgage under which plaintiffs in error claimed was executed by Wolfe & Son, with the intent and for the purpose of defrauding, hindering and delaying the creditors of said Wolfe & Son, and that he actively participated in such fraudulent conveyance, to assist said Wolfe & Son in such fradulent purpose.

The evidence in this case tended to establish the facts set up in defendant's answer. Another case arising out of this transaction was before this court at the June term, 1896, and in that case, *Jaffray et al. v. Wolfe et al.* 4 Okla. 303, the evidence and facts as shown by this record was fully considered by the court and it was there held that the chattel mortgage under which plaintiffs in error claim, was fraudulent and void as against the attaching creditors.

In that case Jaffray and others sued Wolfe & Son and attached the property covered by the mortgage in question after the execution of the mortgage and the delivery of the goods thereunder to the mortgagees. On the question of sustaining the attachments on the ground that the mortgage in question was fraudulent and void as to creditors, and made with the purpose of defrauding creditors, in which fraudulent purpose the mortgagees participated, the trial court sustained the demurrer to the evidence offered by the attaching creditors, which evidence was substantially the same as that presented by the defendant in this case. Upon review in this court, the decision of the trial court was reversed, and it was held that the evidence abundantly established the fraudulent character of the conveyance, and the participation of the mortgagees therein.

In this case, counsel for plaintiffs in error contend that the evidence did not warrant the court in submitting to the jury for finding, nor warrant the jury in finding, either that the plaintiffs had any knowledge of the fraudulent procurement of the goods from the attaching creditors, or of any fraudulent intent on the part of Wolfe & Son, in executing to the plaintiffs the chattel mortgage, and that, if the evidence otherwise fairly presented the hypothesis with respect to the fraudulent procurement of the goods from the attaching creditors, and sufficiently raised the question of knowledge of such fraud on the part of the plaintiffs at the time of taking the mortgage, the entire treatment of the subject by the court is erroneous under the law.

In support of this proposition, counsel contend that, while defrauded creditors have either of two remedies

which they may pursue, such remedies are not concurrent; that if their goods have been fraudulently obtained, they may approve the sale, bring action upon the contract, and attach the debtor's property; or, they may elect to disapprove the sale and sue to recover their property back; but that the two remedies cannot be prosecuted at one and the same time; nor can the joint result of these two methods of procedure be realized in one action. That the actions of the attaching creditors in this case were each based upon a contract of sale, and confirmed that contract and waived all fraud involved in it, so far as the rights of the mortgage purchasers are concerned; that the sole inquiry should have been as to whether the disposition of the property made by the firm of W. F. Wolfe & Son to the mortgage creditors was in and of itself *bona fide* or fraudulent.

The soundness of these propostitions, as abstract propositions of law, will, in the main, not be questioned. The vice of the contention lies in the attempt to apply these propostitions of law to the facts of this case. The defendant representing the defrauded creditors, has not attempted to assert these two remedies as cumulative, or concurrently in one proceeding. He has not asserted title to the goods, as remaining in the defrauded creditors, and sought to recover the goods back. He has attacked the *bona fides* of the purchase of the goods from the attaching creditors, and the *bona fides* of their conveyance to the mortgagees. He asserts that no title to the property, other than a voidable or defeasible title, passed from the attaching creditors to the mortgagors; and that such title being voidable and defeasible, no title thereto would pass to the mortgagees unless they were *bona fide* mort-

gagees; that is; unless they took the mortgage for value and without notice that the mortgagors had acquired the goods fraudulently, or with the intent to so acquire them, and to convey them by mortgage for the purpose of defrauding the persons from whom they had acquired them. He asserts that no title to the property sought to be conveyed by the mortgage passed to the mortgagees, for the reason that the conveyance was made by the mortgagors with the intent and purpose of defrauding their creditors; that such purpose was participated in by the mortgagees, or that they had actual knowledge that the goods were fraudulently obtained, and of the fraudulent purpose of the mortgagors in conveying them; that, therefore, the title to the goods never passed to them; that it remained in the mortgagors, and that the property was subject to seizure under attachment against the mortgagors at the suit of creditors.

The evidence of the goods having been fraudulently obtained from the attaching creditors by Wolfe & Son, was not presented for the purpose of showing by that fact alone a right in the attaching creditors, either to recover back such goods, or to seize any goods of the mortgagees and appropriate them to the payment of any debts due the attaching creditors. That goods were fraudulently obtained from the attaching creditors was neither pleaded not proven by the defendant for the purpose of establishing, independently therefrom, a right of recovery, or as in itself absolutely establishing a defense, but was pleaded and proven as a probative fact, tending to establish the real fact in issue, viz: Whether the mortgage under which the plaintiffs were claiming was fraudulent and void as to creditors. This theory of

the defendant, if supported by the evidence, was a correct theory of the law of the case. The defendant introduced evidence to establish the fact that long prior to any goods being obtained by the mortgagors from the attaching creditors a systematic plan and scheme for the payment of the indebtedness specified in the chattel mortgage and for the releasing of Harvey, Vance and Clark from their liability as securities therefor, was devised and agreed upon by the several members of the Wolfe family, including A. H. Vance; that in pursuance of said scheme, and all looking to the final consummation thereof, Wolfe & Son conveyed their real property in Topeka to their female relatives, including the wife of Vance; that such conveyances were kept from record, and the record title was permitted to remain in W. F. Wolfe and L. H. Wolfe; that the Oklahoma City real estate was conveyed away in like manner, and the deed kept from record, thus enabling Wolfe & Son to falsely and fraudulently represent to merchants that their financial standing was good, and that they were the owners of large quantities of valuable real estate; that by means of this very representation they were enable to fraudulently obtain from the attaching creditors in this case the goods in controversy, for which they never paid, and never intended to pay; that by this plan and scheme, when Wolfe & Son had thus fraudulently obtained the property of others, sufficient to pay off these mortgage debts, they executed a mortgage upon such property for such purpose; that such plan and scheme was actually consummated in all its details, that showing the direct participation of Vance in the fraudulent transaction, and showing that every part and detail of it was but part and detail of one transaction, fraud-

ulent from its inception to its consummation, defendant established not only the fraudulent character of the mortgage as to Wolfe & Son, by showing their intent and purpose thereby to hinder, delay and defraud their creditors, but also its fraudulent character as affecting the mortgagees by establishing the direct participation of Vance in the fraudulent obtaining of the goods, by his aiding in concealing the true title of the real estate upon the credit of which they were purchased, and his knowledge of such fraudulent purchase, and his knowledge of the fraudulent purposes of the mortgagors in executing the mortgage; and showing that the other mortgagees were bound thereby, by reason of said Vance acting as their agent and attorney, and participating in such fraud for their benefit.

It was upon this theory that the defense was presented; this was one of the theories upon which the case was submitted by the court to the jury. It was upon the evidence of these probative facts that the jury found that the mortgage was fraudulent and void, and did not have the effect of conveying the property to the plaintiffs in error. It was the province of the jury to weigh the evidence and determine the ultimate fact. There being evidence to support their finding upon this theory of the case, we would have no right to disturb their verdict, although we might entertain views as to the sufficiency of the evidence differing from those entertained by the jury. But in this case we are satisfied that the verdict is fully supported by the weight of the evidence.

II. The instructions of the court fairly presented the law of the case to the jury; they are not subject to the

·criticism made by counsel for plaintiffs in error. The particular instruction objected to was as follows:

"In order to invalidate the chattel mortgage, it is not ·enough for the defendant to show simply that the firm of W. F. Wolfe & Son fraudulently purchased goods of the attaching creditors, but it must also appear from the evidence that the plaintiffs in this case were parties to such fraud; that they were either active participants in such fraud, or that they aided or abetted in such fraud, or that said plaintiffs, at the time they took said mortgage, actu-.ally knew that Wolfe & Son had fraudulently incurred a liability and debt for the goods or a portion thereof de-·scribed in the chattel mortgage."

A party is not compelled to rely upon one particular ·theory of law applicable to a case for his recovery or ·defense, but is entitled to have submitted by proper in-·structions every theory of the law applicable to the pleadings and proof under which his cause of action or defense might be sustained. If the goods in controversy were fraudulently purchased and obtained by Wolfe & Son from the attaching creditors, and if the mortgagees participated in such fraudulent purchase, or if·they had knowledge that the goods were so fraudulently obtained, they could not obtain a *bona fide* conveyance of such goods to themselves. Hence, to invalidate the mortgage, it was only necessary for the defendant to show that the goods were fraudulently obtained by the mortgagor; that the mortgagees were participants in such fraud, or had knowledge thereof; and, therefore, the instruction of the court ·complained of was a correct enunciation of the law applicable to the case.

One who has been induced by false representations to sell and part with the possession of his goods has more than two remedies under the law: (1) Treating the title

of the fraudulent purchaser as voidable and defeasible, he may rescind the contract and recover his goods back. (2) He may waive the tort, affirm the contract and bring an action to recover the value of the goods, or an action to recover damages for the deceit. (3) Where the fraud consists in inducing by false representations a sale of goods to an insolvent third person, from whom the misrepresenting party afterwards obtains them, the seller may bring suit for the price against the latter party, as though he had bought the goods in his own name. (1 Bej. Sales, 4 Ed. Sec. 491; 2 Schouler Pers. Prop. [2 Ed.] Sec. 612.)

Upon this latter principle, and upon the evidence that Vance, acting for himself and the other plaintiffs in error, by withholding from record the conveyances from Wolfe & Son of all their real estate, thereby participated in falsely representing to the attaching creditors that Wolfe & Son at the time of the purchase of the goods were the owners of said real estate, fraudulently induced the attaching creditors to part with goods which plaintiffs in error afterwards obtained, the attaching creditors might have brought their action for the value of said goods against the plaintiffs in error, by attachment, and have recovered.

The protection of a *bona fide* purchaser from a fraudulent vendee is almost universally recognized by the courts of this country, on the ground only that the fraudulent purchaser has a voidable or defeasible title which, before its annulment by the vendor, the defrauding purchaser can transmit to a *bona fide* purchaser, who is without knowledge or notice of the fraud, and who has parted with value therefor. One who buys with notice or knowledge

of the fraud of his vendor, in obtaining the property, is not a *bona fide* purchaser, and is liable, not only to lose the goods, but if he has parted with them, he is liable to pay their value. (*Sterns v. Gage*, 79 N. Y. 102.)

An antecedent creditor who knows that his debtor procured goods and merchandise by fraudulent means, cannot, by a chattel mortgage, secure a lein on such fraudulently procured goods, adverse to the innocent vendors of such goods. (*Wafer v. Harvey Co. Bank*, [Kans.] 26 Pac. 1032.)

The promotion of injustice and the securing of success for fraudulent and deceitful practices, would be the purpose of the law, if an antecedent creditor, who knows that his debtor has procured goods and merchandise by fraudulent means, and when the sale of such goods is partially induced by his own fraud, deceit and misrepresentations as to the credit of his debtor, could, by a chattel mortgage, secure a lien on such fraudulently procured goods, adverse to the innocent vendor.

We think the law of this case was fairly stated by the court to the jury, and find no error in the record that would warrant our disturbing the verdict of the jury or the judgment of the court. The judgment is affirmed.

All of the Justices concurring.