STATE ex rel. SCHUMAN v. FRALEY et al.

No. 30317. Oct. 21, 1941.

*118 P. 2d 1023.*

Fred W. Martin, of Wagoner, and L. O. Fink, of Pawhuska, for plaintiff in error.

Sim T. Carman, Co. Atty., of Pawhuska, for defendant in error.

G. F. Waggoner, of Wagoner, amicus curiae.

DAVISON, J. In this appeal plaintiff in error seeks a reversal of that portion of the trial court's judgment denying the relator, Morris Schuman, a writ of mandamus requiring the county treasurer of Osage county to certify his redemption of a city lot in Pawhuska, Okla., that had been sold to said county at the 1939 tax resale. As the action was prosecuted by Schuman and he appears to be the real party in interest, he will hereinafter be referred to as "plaintiff."

Plaintiff based his claimed right to such a redemption certificate upon the following provisions of section 14, art. 31, ch. 66, S. L. 1939, to wit:

"The last record owner of any real estate sold at the 1939 tax resale, or any person having a legal or equitable interest therein, may redeem the same by paying to the county treasurer on or

before the 1st day of December, 1939, the full amount paid for resale deed if sold to an individual purchaser, including costs of listing, advertising and sale, and the costs of deed and recording thereof paid by him, plus penalty and interest at the rate of one per cent (1%) per month; and if purchased in the name of the county, the full amount for which said property was sold, plus penalty and interest at the rate of one per cent (1%) per month; such redemption shall be evidenced by a certificate of the county treasurer. . . ."

In August, 1939, several months after its purchase of the lot at the resale as mentioned above, the county sold it to one R. S. Tolson. When, on November 28, 1939, plaintiff formally tendered to the county treasurer the full amount for which the county had sold the same to Tolson, together with the fees, expenses, penalties, etc., provided in the above-quoted act, and requested that he be issued a redemption certificate in accordance with said act, the county treasurer refused to accept said tender or to comply with plaintiff's request because the sum tendered was less than the amount for which the lot had been sold to the county at the resale. Thereafter, but on the same date, plaintiff commenced the present action to compel the county treasurer to accept his tender and issue the certificate.

By the time the cause was ready for trial there seems to have been no dispute as to the sufficiency of plaintiff's tender, and the principal question at issue then was whether or not plaintiff had such an interest in the lot as to entitle him to redeem it under the provisions of section 14, art. 31, ch. 66, supra.

There was no question raised concerning the validity of plaintiff's title to or ownership of the lot prior to August 16, 1935, but the records in the office of the county clerk of Osage county revealed a quitclaim deed executed by the plaintiff to one C. Plant, as grantee, and filed of record on April 29, 1936. Plaintiff admitted the execution and delivery of this deed, but, nevertheless, alleged in his petition for the

writ of mandamus that he was the owner of the lot. Plaintiff's allegations were generally denied, both in an answer filed on behalf of the county treasurer and the county clerk, and a pleading filed by R. S. Tolson, designated as an "interplea." In the latter, the facts concerning Tolson's purchase of the lot from the county were set forth; it was asserted that by reason thereof he was its owner, and Tolson specifically denied that plaintiff had any equity or interest in the lot or the right to redeem it.

At the trial, the plaintiff attempted to establish that he had a "legal or equitable interest" in the lot at the time of the 1939 resale entitling him to redeem it from said sale under the statute hereinbefore quoted, by showing, first, that he had not divested himself of the real or actual ownership nor the equitable title to the lot by his purported quitclaim deed of August 16, 1935, and also that the nominal title evidenced by said instrument was reinvested in him about one month prior to the resale by a quitclaim deed executed and delivered to him on March 24, 1939, by C. Plant, the grantee named in his quitclaim deed of August 16, 1935. The only evidence introduced by either the plaintiff or the defendants which tended to establish the latter alleged transfer of title was the testimony of the plaintiff himself and a quitclaim deed which on its face purported to have been duly executed and acknowledged by C. Plant as grantor to the plaintiff as grantee on March 24, 1939. There was testimony given on behalf of the defendants which tended to show that the execution of the instrument had not been acknowledged as shown on its face and to contradict the testimony of the plaintiff on this point.

Certain remarks made by the trial judge and included in the record are rather enlightening as to his reasons for rendering that portion of the judgment herein appealed from. They are as follows:

". . . Now, certain testimony has been offered here on the part of the plaintiff, Morris Schuman, to the effect that the

quitclaim deed dated March 24, 1939, was executed on that date by C. Plant to him, and that he was the record owner of this property, or at least had an equitable interest in it at the time of the resale. The only evidence that he had any interest is his evidence to that effect. So far as this deed is concerned, the court does not intend to recognize it at all from the fact that it was not properly executed and was not delivered, and there is a question in my mind about the validity of the entire thing—and particularly the deed was not completed upon that date, and inasmuch as the representations made with reference to this deed are so contrary, in the mind of the court, to what the facts were, he is going to ignore all evidence concerning any equitable interest in this property, and I am going to hold that Mr. Tolson is the owner and entitled to lot 12, block 21 of Original Townsite of Pawhuska under the terms of the deed, and I will deny the mandamus on that property."

Much of the argument in the briefs of both the plaintiff and the county treasurer, who is the only one of the defendants filing a brief herein, concerns the validity of the purported quitclaim deed dated March 24, 1939, as a conveyance of title; the plaintiff asserting that even though the grantor's execution of same was not properly acknowledged as the evidence of the defendants tended to show, this did not destroy its validity as a conveyance of title from C. Plant to him; and it being argued on behalf of the county treasurer, hereinafter referred to merely as the defendant, that such proof was fatal to the validity of the deed. It is also pointed out on behalf of the plaintiff, however, that the validity of this purported quitclaim deed as a conveyance of title from C. Plant to the plaintiff is an immaterial consideration if at all times subsequent to his acquisition of the lot and on the date said deed is supposed to have been executed, plaintiff, rather than C. Plant, was the true owner of the lot. Thus if we conclude that his evidence on this point is to be believed and was binding upon the trial court, we need not consider the parties' contentions with reference to other matters.

Plaintiff's testimony to support his claim that he was not divested of his ownership of the lot by his execution and delivery of the quitclaim deed of August 16, 1935, and that subsequent thereto he had at least an equitable interest in the lot, was to the effect that said deed was in the nature of a mortgage or bond rather than an absolute and unconditional conveyance. He testified that C. Plant (whose full name is said to be Carrie Plant) is his sister-in-law; that she had loaned or advanced him a sum of money which was used to purchase other property; and that he had executed and delivered to her the quitclaim deed of August 16, 1935, merely for the purpose of securing or indemnifying her against the loss of said sum. There is not one iota of evidence in the record tending in any manner to dispute this testimony except the deed itself. Ordinarily, such testimony is insufficient, where uncorroborated, to overcome the presumptions accompanying a validly executed and acknowledged deed, one of which is that the deed is an absolute conveyance just as it purports to be. Renas v. Green, 88 Okla. 169, 212 P. 755; McElroy v. Calhoun et al., 177 Okla. 38, 57 P. 2d 827. Thus, in the latter case, the rule that the presumption of validity which is indulged with reference to a deed that is valid on its face and properly acknowledged cannot be overcome by the uncorroborated testimony of the grantor, was evolved from the holding of this court in Winn v. Willmott, 138 Okla. 177, 280 P. 808, as follows:

"The presumption of validity that attaches to a deed to realty shown to be regular in execution upon its face cannot be overcome by the uncorroborated testimony of the grantors alone, where the surrounding facts are as consistent with the validity of the deed as they are with the denials of the grantors."

The above rules, however, do not furnish legal justification for the trial court's refusal in the present case to recognize the plaintiff's claim that the deed in question was not a conveyance, for here his testimony in support of said claim was not entirely uncorrob-

orated. R. S. Tolson, who was a witness on behalf of himself and the defendant county officials, testified that at the time he purchased the lot from the county he ascertained from the man who was collecting the rents on said property that the plaintiff was its former owner, and he further testified that he ascertained from the record that title to the lot was held in the name of C. Plant, but he knew that plaintiff was affiliated with her and had some interest in the property. On the basis of the only evidence of them in the record, it cannot be said that the facts pertaining to or surrounding the execution and delivery of the plaintiff's deed to his sister-in-law are as consistent with the assumption that it evidenced a transfer of the ownership in the lot as with plaintiff's claim that it evidenced merely a conditional transfer of the nominal title thereto to be nullified upon payment of the loan which it was intended to secure. Plaintiff's statement that he had repaid the loan was uncontradicted, as was his testimony that by reason thereof his sister-in-law transferred the title to the lot back to him by executing and delivering the quitclaim deed of March 24, 1939, to him. Incidentally, it will thus be noted that the trial judge's remark hereinbefore quoted that said deed "was not delivered" is without substantial support in any of the testimony introduced by either party. The only testimony casting any doubt whatsoever upon the plaintiff's claim that Carrie Plant had signed and delivered the instrument to him on the date it bore was the statement of the notary public whose certificate of acknowledgment appeared thereon that the "C." in the grantor's purported signature appeared to be larger than that part of her signature on other deeds he had seen. From the foregoing it will also be noted that the trial judge's statement that the only evidence of plaintiff's equitable interest in the lot was his own was incorrect. As above indicated, we conclude that the trial court's failure or refusal to recognize and to give effect in his judgment to the uncontradicted evidence in support of plaintiff's claim concerning his quitclaim deed of August 16, 1935, to Carrie Plant cannot be justified solely upon the basis of the presumption hereinbefore mentioned accompanying it.

Nor do we think that such failure or refusal can be justified upon any other rule of law or legal principle followed in this jurisdiction. This court has been a consistent adherent to the rule that the effect and weight to be given inconsistent or contradictory testimony are to be determined solely by the trier of fact whether court or jury (see Beams v. Step, 116 Okla. 291, 244 P. 775, and other decisions reviewed in Lowe v. Hickory, 176 Okla. 426, 55 P. 2d 769), yet we have also recognized the rule that competent and undisputed evidence is usually binding upon the court or jury. See Carlisle v. State, 178 Okla. 231, 62 P. 2d 617, 618. If this were not true, then judgments of trial tribunals could never be reversed or set aside as contrary to or clearly against the weight of the evidence. In this connection see excerpt from Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102, quoted in the annotation at 8 A.L.R. 796, 828. In this court's reference to the rule above mentioned it has used the term "undisputed credible testimony," and it is generally recognized that there are many qualifications to the rule, and that testimony cannot be regarded as "undisputed" if at variance with known natural law, physical fact, or with the reasonable inferences to be drawn from other evidence. See Carlisle v. State, supra; authorities cited in Wistar v. Whitewing, 189 Okla. 292, 116 P. 2d 565, 570; Smucker v. Pennsylvania R. Co., 6 Pa. Super. Ct. 521; Hull v. Littauer, supra; and other authorities cited in the annotation, supra (8 A.L.R. 796). There is no evidence in the present case from which a reasonable inference can be drawn to refute the plaintiff's testimony to the effect that his deed to his sister-in-law was in the nature of a mortgage rather than an absolute conveyance, and such testimony is not inherently improbable under the circumstances. We know as a matter of common knowledge and observation that deeds are often ex-

ecuted and delivered for a variety of reasons, including considerations of expediency, and that in many of such instances such instruments are never intended to evidence a transfer of ownership. This is particularly true as between individuals bearing a blood or fiduciary relationship to each other and those intimately associated in the same business venture. The evidence in the present case tends to show that some such relationship existed between the plaintiff and his sister-in-law at the time he executed and delivered to her his quitclaim deed of August 16, 1935.

We regard plaintiff's testimony concerning the deed of August 16, 1935, entirely plausible, and we find nothing in the record to prevent it from being regarded as "undisputed credible testimony." While we recognize that there is some difference of opinion among the various courts of the nation that have dealt with the problem as to whether the uncontradicted testimony of an interested witness may be disregarded in the determination of the issues of civil actions (annotation 8 A.L.R. 796), we do not believe that the fact that a witness may be interested in the outcome of an action in which he testifies is sufficient in itself to deprive his testimony of the binding force and effect accorded other competent evidence, where there is no other circumstance to create any question as to its credibility. A review of the authorities on the subject reveals that in most instances where appellate courts have upheld verdicts and judgments contrary to the uncontradicted testimony of an interested witness, such testimony was uncorroborated. As hereinbefore demonstrated, the testimony of the plaintiff concerning his ownership of the lot after deeding it to his sister-in-law cannot be deemed uncorroborated.

Nor do we find any inconsistencies in that portion of the plaintiff's testimony. The only legal ground that could be fabricated for disregarding it must of necessity be based upon inconsistencies in or contradictions of that portion of his testimony dealing with the acknowledgment of his sister-in-law's purported quitclaim deed to him of March 24, 1939. Judging from the trial judge's remarks before entering the judgment, these factors appear to have played an important part in his decision to disregard other portions of the plaintiff's testimony. Thus it will be observed that in arriving at this conclusion, the judge, in effect, recognized the doctrine represented by the legal maxim: "Falsus in uno, falsus in omnibus." Thus it appears that because he disbelieved, or at least entertained some doubt, as to the truth or accuracy of the plaintiff's testimony concerning the deed of March 24, 1939, the court decided to reject, not only that portion of his testimony, but also his testimony concerning the deed of April 16, 1935, which tended to show that he was the owner of the lot before, and without regard to, the execution and delivery of either deed. Assuming without deciding the propriety and correctness of the method apparently employed by the trial court for determining the credibility of that portion of plaintiff's testimony last mentioned, since we have decided, upon the basis of undisputed credible testimony, that it was immaterial whether the purported deed of March 24, 1939, was valid or not, we conclude that the trial court erred in disregarding the evidence of such ownership. In connection with this, see Jones, Commentaries on Evidence (2d Ed.) p. 4897, § 2473; Wigmore on Evidence (3rd Ed.) §§ 1008 et seq.; and other authorities cited in the annotation at 90 A.L.R. 74. Therefore, as, upon the basis of such evidence, plaintiff was entitled to the writ of mandamus denied him by the trial court, that portion of said court's judgment effecting this denial is hereby reversed; and said court is hereby directed to issue said writ.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur.