OKLAHOMA CITY FEDERAL SAVINGS & L. ASS'N v. SWATEK.

No. 29915. July 7, 1942.

Rehearing Denied Nov. 10, 1942.

*130 P. 2d 514.*

Everest & Halley and James C. Mc-Williams, all of Oklahoma City, for plaintiff in error.

Bohanon & Adams and Bert Barefoot, Jr., all of Oklahoma City, for defendant in error.

DAVISON, J. This action was instituted March 3, 1939, by M. A. Swatek, as plaintiff, against Oklahoma City Federal Savings & Loan Association, as defendant, to establish his ownership of ten shares of capital stock in said association and to collect the dividends alleged to be due thereon.

In his amended petition plaintiff predicated his asserted rights upon his alleged purchase of said shares on May 27, 1902, and stated that on said date an instrument referred to as stock certificate No. 331 evidencing his ownership of said stock was executed and delivered to him on behalf of "Oklahoma City Building & Loan Association," which was the name of the defendant corporation before its "federalization" under the "Home Owners Loan Act of 1933."

The money judgment plaintiff sought was the principal sum of $21,552.97. This he alleged was the total sum of the dividends his stock had earned. The figure thus designated was computed by totaling the various dividends that would have accrued to plaintiff had he purchased full paid stock in the amount and on the date set forth in his petition, and if upon their accrual semiannually, said dividends had been reinvested in other stock of the same character. In other words, plaintiff sought to recover not only the regular semiannual dividends upon ten shares of stock such as he claimed to own, but he also sought the same rates of return on such accrued dividends that the defendant corporation had paid as capital stock dividends.

In its answer the defendant corporation admitted the genuineness of the signatures appearing upon the purported stock certificate (a photostatic copy of which plaintiff had attached to his petition), but it denied plaintiff's purchase of the stock; denied that plaintiff had given or that it had received any consideration for same; and set forth many other allegations, some of which will hereinafter be discussed.

Upon a trial without a jury of the issues joined by the respective parties' pleadings, including an amended reply filed by the plaintiff, the court rendered judgment for the plaintiff after specifically finding that he was the owner of the stock certificate in question, but limited the amount of his recovery to the sum of $3,196.50, which represented dividend accruals on ten shares of capital stock in the defendant corporation from the date of the certificate up to

and including December 31, 1938, without any allowance of the compounded interest or "dividends upon dividends" which made up a major portion of the sum plaintiff had prayed for.

The defendant has perfected this appeal, asserting that the trial court erred in granting the plaintiff any recovery whatsoever, while plaintiff in a cross-appeal complains of said court's refusal to allow him the entire sum prayed for in his petition.

Defendant's argument is presented in answer to two principal questions. The first of these is formulated in its brief as follows:

"Has the plaintiff met the burden of proof that he is the owner of $1,000.00 of the capital stock of the Oklahoma City Building and Loan Association?"

In determining whether the foregoing question must be answered in the affirmative, as the trial court has done, or in the negative, as the defendant urges, it is necessary to consider the evidence material to this issue.

The only documentary evidence of Swatek's ownership of the stock in question was the instrument hereinbefore referred to as "stock certificate number 331" which plaintiff introduced as his exhibit No. 1. That instrument on its face purported to have been issued to Swatek by the Oklahoma City Building & Loan Association, certifying to his ownership of ten shares of capital stock in said association over the signatures of J. M. Owen and Macgregor Douglas. At the trial it was established that Owen was the vice president and Douglas the secretary of said association on May 27, 1902, the date appearing on said certificate. There was no question of the authority of these officers to issue such certificates, and as hereinbefore noted the defendant admitted that their signatures on the one involved herein were genuine. Thus the certificate itself was prima facie evidence, not only that the stock it referred to was validly issued, but also of plaintiff's ownership thereof (18 C. J. S. 730, § 264). Upon its introduction in evidence the burden of proof

or the duty of introducing evidence sufficient to overcome the presumptions created in plaintiff's favor by his introduction of the duly executed certificate shifted to the defendant.

We have thoroughly examined the record and have been unable to discover therein any evidence of sufficient probative force to warrant the conclusion, contrary to the judgment of the trial court, that the defendant's burden above mentioned was ever discharged and the presumptions accompanying plaintiff's exhibit No. 1 were ever overcome. The defendant introduced no evidence which directly and positively contradicted the certificate of plaintiff's ownership of the stock.

Much is said in the defendant's brief with reference to the plausibility of plaintiff's version of how he came into possession of the certificate and his explanation of his delay in asserting his rights thereunder, but plaintiff was never directly contradicted as to the material facts about which he testified. According to his undisputed testimony, he purchased the stock in May, 1902, through one A. L. Welsh, to whom he delivered the sum of $1,000 in cash in return for the certificate in question, which he then placed in a deposit box where he kept deeds and other valuable papers at the State National Bank. Other testimony given by the plaintiff was to the effect that thereafter he forgot about owning the stock and overlooked the certificate until he found it about three years before the trial. Plaintiff's cross-examination revealed that he had had occasion to open his deposit box at the bank many times during the period of more than 30 years during which he claimed to have forgotten that he had it; that during this time he transferred the entire contents of the box to a safety deposit box in the Farmers National Bank (which apparently was the same banking institution that is now known as the City National Bank), and also that during much of this time he owned other stock in the defendant association and had been to its office often in connection with various transactions. In view of

such circumstances and others less significant, counsel say it is indeed strange that Swatek would overlook the certificate and forget for so many years his purchase of the stock which at the time of the trial he seemed to recall so vividly. Upon the whole, however, we cannot say that the plaintiff's story is so inherently improbable as to render it unworthy of consideration. One circumstance which lends credibility to it is that when the certificate was first placed in plaintiff's deposit box it was enclosed in an envelope with other papers and as far as the record shows it remained there without plaintiff ever again having occasion to open the envelope until he claims to have discovered it. Under the rules which govern this court's consideration of such testimony, it cannot be deprived of the weight given other undisputed competent evidence in support of the trial court's judgment. In this connection see State ex rel. Schuman v. Fraley et al., 189 Okla. 511, 118 P. 2d 1023, and authorities therein cited.

It seems to be defendant's position that in order for plaintiff to establish himself as the owner of the stock he claims to have purchased through Welsh, it was incumbent upon him to prove that the defendant corporation or one of its authorized agents received the money that he said he delivered to Welsh in payment therefor. Accordingly, counsel call our attention to the proof that in May, 1902, Welsh was neither an officer nor employee of Oklahoma City Building & Loan Association and to the absence of any proof that he was said association's agent for the sale of stock or for any other purpose. They also call our attention to the silence of the existing records of said association as to its issuance, sale, or receipt of payment for the stock in question, and to other portions of the evidence, including testimony by J. M. Owen, which lends some support to the defendant's contention that as far as the record reveals, Oklahoma City Building & Loan Association never received any of the proceeds of the stock sale about which plaintiff testified.

In our opinion the above argument and the authorities cited in support thereof furnish no justification for reversing the judgment in the present case. As hereinbefore noted, the stock certificate in plaintiff's possession was prima facie evidence of his ownership of the stock therein described without independent proof that he had purchased same or had given a consideration therefor. Considering the evidence as a whole, the facts thereby proved cannot be regarded sufficient, as a matter of law, to overcome the presumptions that must be indulged in plaintiff's favor by reason of his possession of the certificate. There was no affirmative showing that plaintiff acquired said certificate wrongfully or that the stock transfer which it evidenced was not a valid one. Any finding of either of such facts would of necessity be based upon a negative showing rather than an affirmative one, i.e., any such finding would have to be inferred from the failure of the defendant's records to disclose any evidence of the issuance or sale of such stock and the absence of proof that Welsh was an agent of said association.

What we have said above concerning the defendant's other evidence is also largely true of the canceled stock certificates it introduced. They do not directly or positively establish the invalidity of plaintiff's purported stock certificate nor destroy its probative force as evidence of plaintiff's purchase of fully paid stock in the number of shares designated thereon. All that they conclusively establish is that in the early period of the Oklahoma City Building & Loan Association's operation, a different form of printed certificate was not always used for fully paid stock as for installment stock. At least this is what the certificate issued to J. H. Everest on January 5, 1899, tends to show. On that certificate there were certain interlineations amending the printed form to indicate that it represented Everest's ownership of fully paid stock, but there is no specific wording on plaintiff's stock certificate No. 331 to indicate that it was issued pursuant to a sale of installment stock rather than fully paid stock. In view of the inferential char-

acter of such evidence, we cannot regard it as fatal to the probative force or value of plaintiff's certificate.

When all the factors that have a bearing upon the matter are given proper consideration, it cannot be said that the trial court's finding as to plaintiff's claimed ownership of fully paid capital stock in the defendant association is clearly against the weight of the evidence. The trial court is therefore affirmed on this point.

The corporation next contends that "plaintiff's right to a decree is barred by his own laches and neglect." Similarly, it asserts that "plaintiff's action for dividends accruing more than three years prior to the suit is barred by statutes of limitation and by laches."

Since laches is presented as a bar to both the plaintiff's asserted equitable right to be decreed the owner of the stock and to his right to recover dividends, we will consider that phase of the law and its application to this case.

Laches in legal significance is a delay which works a disadvantage to another. Parks v. Classen Co., 156 Okla. 43, 9 P. 2d 432; Kirkpatrick v. Baker, 135 Okla. 142, 276 P. 193; Nickel v. Janda, 115 Okla. 207, 242 P. 264; Skinner v. Scott, 29 Okla. 364, 118 P. 394. It likewise includes an element of knowledge. 19 Am. Jur. 343, 344. Thus justifiable ignorance of facts creating a cause of action by one who has failed to assert it may prevent the doctrine from being applicable, or, as is otherwise stated, the party charged must have knowledge or means of knowledge of the fact creating his right or cause of action. Phelan v. Roberts, 182 Okla. 202, 77 P. 2d 9.

In this case it may be asserted without the necessity of discussion that the delay of more than 30 years was sufficient to meet the requirements of the law, and it may also be recognized that the plaintiff had means of knowledge of the facts creating his right of action, and was therefore not justifiably ignorant. Thus the effectiveness of the plea of laches depends upon the existence of detriment or disadvantage attributable to the delay. In connection with the application of the doctrine of laches to any given case a large element of judicial discretion is involved. As we said in paragraph 3 of the syllabus in Moore v. Moore, 167 Okla. 365, 29 P. 2d 961:

"The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches' legal significance is not mere delay, but a delay that works a disadvantage to another."

See, also, Fourth National Bank of Tulsa v. Memorial Park, 181 Okla. 574, 75 P. 2d 887; Higgins v. Classen, 176 Okla. 233, 55 P. 2d 101; American First National Bank of Oklahoma City v. Peterson, 169 Okla. 588, 38 P. 2d 957.

There are two elements of disadvantage involved in this case and attributable to the lapse of time which expired prior to the institution of this action which are worthy of discussion. The first is the disadvantage sustained by the defendant corporation in the production of evidence. This disadvantage may under proper circumstances be legally sufficient to authorize an application of the doctrine. 19 Am. Jur. 355. The second is the fact that the funds available for the payment of dividends from year to year have been annually disbursed and distributed among other stockholders and no amount has been set aside for dividends on this particular stock.

The first disadvantage goes to plaintiff's right to be decreed the owner of the stock, and if of sufficient strength to be applicable, the doctrine of laches would defeat all recovery in this case, since any right of dividends and accumulations is entirely dependent upon the ownership of the stock.

We have already reviewed the evidence and noted that in some respects the evidence is more deficient now than it was at an earlier date and some disadvantage was unquestionably sustained by the corporation by reason of lapse of time.

The object of all evidence is of course

to establish the facts to which the law attaches legal consequences. Our review and analysis of the evidence in this case has convinced us that it is adequate to establish the facts in connection with the ownership and validity of the certificates of paid-up nonborrowing stock in the defendant corporation. Such doubt as may be said to exist on this point is not of sufficient substance to enable the defendant to invoke the doctrine of laches to defeat the determination of ownership. In other words, the loss of evidence was not a sufficient disadvantage to supply that essential element of laches. It is, however, essentially different in connection with the incidental claims for dividends.

We are here dealing with a particular character of corporation, a building and loan association. Such an association is authorized to issue a number of different kinds of stock. Walker v. Local Building & Loan Association, 176 Okla. 168, 54 P. 2d 1078; 12 C. J. S. 422 et seq. The members or shareholders of a building and loan association are frequently divided into two classes, borrowers and nonborrowers, and the earnings of the association are periodically apportioned among the two classes of shareholders. 9 Am. Jur. 106. The shareholders who from time to time receive or are credited with their proportionate share of the earnings of the corporations are those who are shown on the books of the association as shareholders. In this case, the plaintiff was not shown by the books of the corporation to be a shareholder. Thus he did not receive nor was he credited periodically with his proportionate share of the earnings of the association. His share was disbursed by the corporation without consideration of the existence of his stock. If he now recovers it from the association in the form of a judgment, the burden of its payment will indirectly fall upon the present shareholders. This would not be an inequitable result if the shareholders now were the same as they have been from year to year throughout the time the alleged debt has accrued. But there has been a constant change. New nonborrowing shareholders have acquired interests in the company. Loans have been made and paid. There has thus been a constant march of borrowing shareholders. In fact, the plaintiff himself was once the holder of quite a large amount of other shares in the association and to that extent has profited by the fact that the association and he had lost track of the shares of stock here involved.

The peculiar circumstances of this case are such that, in connection with the claim for dividends, the disadvantage occasioned by the delay of the plaintiff in asserting his claim has been sufficient to merit a denial of that claim on consideration and application of the doctrine of laches to that claim.

It is pointed out in the briefs that, generally speaking, the accrual of dividends on stock subsequent to their declaration by the corporation creates a debtor-creditor relationship between the corporation and the stockholder and that the rights and remedies of the stockholder to recover the dividends thus accrued are governed by legal as distinguished from equitable principles. From which it follows, according to the authorities cited, that the effect of delay in asserting a claim for dividends is governed by the statute of limitations, a legal bar to recovery, and not laches, an equitable bar to recovery. In such cases demand is frequently held to play an important part. The authorities are not in accord as to whether the statute begins to run without demand, when demand is made, or after the expiration of a reasonable time during which demand should have been made. Yeaman v. Galveston City Co., 106 Tex. 389, 167 S. W. 710; Harris v. Neuman, 179 Ga. 879, 177 S. E. 698; Armant v. New Orleans & C. R. Co. (La.) 7 So. 35; In re Boston & Roxbury Mill Corporation, 218 Mass. 425, 105 N. E. 982; Purcell Bank & Trust Co. of Purcell v. Byars, 66 Okla. 70, 167 P. 216; State ex rel. Schilling v. Oklahoma City, 67 Okla. 18, 168 P. 227; State ex rel. Gooch v. Drumright, 8 Okla. 244, 212 P. 991; 34 Am. Jur. 98; 13 Am. Jur. 637 et seq.; 13 Am. Jur. 733.

Assuming, without deciding, that the rights to declared dividends should in most cases be determined upon consideration of the legal rules, including the statute of limitation (as distinguished from laches) where and when applicable, we are of the opinion, and hold, that in this case the doctrine of laches is applicable. This by reason of the particular circumstances here involved.

Basically, the action resolved itself into a controversy over the validity and genuineness of a certificate of stock. The right to dividends was entirely dependent on and incidental to the determination of the basic issue in the action. Though the certificate was rightfully found to be valid, it was nevertheless not listed on the books of the company which at an early time had not been kept with perfection. While there had been periodical declarations of dividends, such distribution of earnings had no reference to this particular certificate of shares of stock. A disadvantage has thus been sustained by the delay.

The parties are in accord that the basic issue in the action is one of equitable cognizance. In fact, they stipulated in the trial court that the case was one in equity. Under these circumstances we entertain the view that the claim for dividends accruing more than three years prior to the institution of this action is barred by laches. However, we allow dividends for the three years prior to the institution of the action for two reasons: First, because the defendant, as indicated by its proposition on the point, does not seek to defeat their recovery; second, because during more recent years there is less reason for application of the doctrine. There has been less change in the shareholders of the corporation and to a large extent the shareholders now sustaining the detriment of the allowance are the same as those who during the three-year period received the advantage of the former failure in allocation of funds to the shares here involved. In other words, the disadvantage sustained by the delay gradually diminished as the years advanced toward the year in which the action was instituted, and while any time fixed is to a certain extent arbitrary, the three years which the defendant association itself suggests in its proposition commends itself for judicial approval, and is approved.

Among the authorities called to our attention by the plaintiff in support of his claim for dividends, the case of Holly Sugar Corp. v. Wilson, 101 Colo. 511, 75 P. 2d 149, is sufficiently similar to the case at bar to merit special consideration. That case is, however, distinguishable. Therein a claim for dividends for several years was approved notwithstanding the failure of the stockholder to assert his right thereto. An important distinction between that case and the case at bar lies in the fact that the existence of an obligation in the form of outstanding stock was known to, and recognized by, the corporation. Through confusion in the management of its affairs it erroneously issued new certificates to another individual of the same name who was not the owner but who presented an affidavit that he was the owner of the stock and had lost the original certificate of the corporation. Thus dividends of the corporation were declared and apportioned accordingly with reference to the stock, but received by the wrong man; whereas, in this case the existence of any stock was unknown, as well as the identity of the owner, and dividends were not declared or distributed with reference to the stock herein involved. Furthermore, and equally significant, the stockholder in the cited case was diligent in that he was at all times aware of his ownership of the stock. He failed to claim dividends because he did not know they were being declared. He was justifiably ignorant of his rights. The Colorado court so indicated. Here the stockholder carelessly forgot he owned the stock, but knew that the corporation was declaring dividends. That case is therefore not of governing importance in the case at bar and does not alter or modify our conclusion as heretofore announced.

The plaintiff has presented a cross-appeal claiming earnings on the divi-

dends which were denied by the trial court. The principles heretofore announced in connection with dividends govern our decision on this claim. The cross-appeal will be denied.

The judgment of the trial court is affirmed as to the determination of plaintiff's ownership; reversed and modified as to the allowance of dividends accruing more than three years prior to the institution of this action. On defendant's cross-appeal it is affirmed as to the denial of earnings on dividends.

The cause is remanded, with directions to the trial court to modify its judgment according to the views herein expressed.

Three members of the court, WELCH, C. J., CORN, V. C. J., and GIBSON, J., are of the view that plaintiff should be denied any relief, and they therefore dissent; RILEY and BAYLESS, JJ., are of the view that the judgment of the trial court should be in all things affirmed; OSBORN and HURST, JJ., concur fully in the views and results expressed by the writer hereof. Since, however, a majority of the entire court are of the view that the judgment of the trial court should be affirmed insofar as it sustains the validity of the stock certificate, RILEY and BAYLESS, JJ., concur in awarding judgment for dividends for a period of three years prior to institution of the action herein, but dissent to the disallowance of other unpaid dividends as found by the trial court.

ARNOLD, J., absent.

---

ARNOLD, J. (dissenting on rehearing). The majority opinion approves the finding of the trial court that plaintiff bought and paid for the certificate of stock in question; that it was validly issued at the time shown on the face thereof; that the owner thereof never received any dividends thereon, though semiannual dividends were declared and paid to the other holders of similar stock during the period of time involved; that the issuing company never paid dividends on the stock in question because it did not have a record thereof and no demand therefor was made; that the owner forgot he owned the stock and neglected to claim his dividends that would and did accrue thereon; that he should be excused for his failure to claim ownership of the stock and his certificate should be validated, but he should be allowed to take only the accrued dividends for a period of three years prior to the date he instituted his action. The denial of dividends except for a period of three years prior to the date he filed suit is based on the theory that he was guilty of laches in failing for a number of years to claim his dividends and that such failure worked a detriment to the present stockholders.

I am unable to see any distinction between the stock itself and the accrued dividends as far as the application of the principle of laches is concerned. I am also unable to agree that laches applies under the facts and circumstances of this case.

The defendant contends with the same earnest forcefulness and logic that laches, estoppel, and the statute of limitations bar both claims of plaintiff, to wit, that the certificate is valid and that he is entitled to all accrued dividends. There never was any record, according to the defendant, that Swatek bought or owned the certificate of stock sued on or that it was validly issued; so the purchasers of stock in the company never could tell from the books of the company that this particular stock was outstanding and would therefore affect the amount of dividends to be allocated to them on their stock. The negligence of the company to keep its books properly, if the finding of the trial court and record herein and the majority opinion are to be accorded any consideration, is the reason for the existence of this situation. If the company had recorded the transaction with Swatek, all purchasers of stock would thereafter know of its existence and they, no doubt, would have received less dividends than they did actually receive; so it is obvious that up to the time of the established validity of the Swatek stock the stockholders of

the company had received benefits by way of increased dividends as the result of the neglect of both Swatek and the company. If Swatek now receives the amount of his accrued dividends, the stockholders will not suffer thereby, for they will only forego the receipt in the future of an amount equivalent to the excess already received on account of Swatek not being paid his dividends. They have already received Swatek's dividends. Everybody buys stock in corporations with knowledge of the fact that mistakes may have been made or may thereafter be made, or other contingencies may arise or might have arisen which might cast liability upon the company. Purchasers of stock in a company, such as the one herein, know that by negligence stock actually sold and the consideration therefor appropriated by the company may not have been entered upon the books of the company. Negligence of the obligee, as here, is often a benefit to those who eventually must pay the obligation. The proceeds of all purchases of stock are used by the company to increase its assets and enable it thereafter to pay greater dividends to all of its stockholders. The dividends that accrued to the Swatek stock would increase and enlarge the assets of the company and, no doubt, did increase its ability to pay dividends to its stockholders. The longer the day of payment of the Swatek dividends, without interest, is postponed—the greater the profit to those stockholders. So, anyway you look at it, even after Swatek has been repaid all accrued dividends, without interest, the stockholders of the company, past and present, have in effect had the benefit of the use of his money for a varying number of years; this is a distinct advantage and not a detriment to even the present owners, for they get the benefit of the increased assets now owned by the company as a result of the use of Swatek's money.

The trial court's judgment in this case, denying Swatek interest on his long past due dividends, casts a large and sufficient loss upon Swatek for his neglect in failing to demand his dividends. The company assets have been increased by the use of his dividends for all these years without charge and the present stockholders and those who have sold during the time from the date Swatek purchased down to the present time have had, or are now enjoying, the benefits of his neglect to demand his dividends. Equitable laches applies only in cases where there is inexcusable negligence or delay that causes actual detriment to innocent persons.

It is common knowledge that building and loan companies build up reserves to offset such valid claims as the one under consideration. Swatek helped to build such reserve and contributed to any undivided profits that the company may have on hand.

No doubt the judgment, to be rendered in accordance with the directions of the majority opinion, will be paid out of the reserve or undivided profits of the company. The present stockholders, regardless of when they purchased their stock, are enjoying the benefits that flowed directly and indirectly from all investments in the company's stock. This is particularly true of Swatek's stock, for he never drew any dividends and the assets of the company were increased by the use of his money without charge. How, then, could a court of equity cut off such a vast majority of a valid claim to satisfy such a theoretical claim of detriment, in order to punish one for negligence that has been judicially excused?

The statute of limitations and laches defeat the collection of just debts. Such defenses are justified only to prevent such claims or injury to innocent people. Such defenses should not be allowed except under compelling circumstances. If Swatek actually paid for this stock, and the majority say he did, and he honestly forgot it and for this reason failed to demand his dividends as they accrued, and the majority say he did, and the company used his money in the interest of the present and subsequent stockholders, and the record discloses this, then all received a definite benefit by his and the company's neglect, if

you refuse, as the trial court did, to allow Swatek interest on his dividends. Either Swatek is entitled to his stock and the accrued dividends or he is not entitled to anything—not even a judgment validating his stock certificate. The determination of the question of the validity of the stock, under all the circumstances, was a difficult one, no doubt, for the trial court, but it determined this issue unfavorably to the defendant and the majority opinion approves its judgment in this regard; we should not allow a hard factual situation to cause us to improperly apply the sound old principle of laches, but should apply it only to prevent definite injury to innocent persons.

By the judgment of the trial court and the majority opinion two facts are conclusively shown by the record in this case: (1) That the defendant company had no record of the Swatek transaction. (2) Swatek forgot that he owned the stock in question. However this may be, the lower court and this court having both validated the stock, the company has been Swatek's trustee since its issuance. There was no duty on his part to demand his dividends so long as the trust had not been by any fact or circumstance renounced. Granting that he knew the company was paying dividends on this character of stock, his failure to demand the dividends would have no legal effect except to cut off his right to interest thereon. This being true, the case of Holly Sugar Corp. v. Wilson, 101 Colo. 511, 75 P. 2d 149, is exactly in point except that the equities in the present case are more strongly in favor of Swatek than in favor of Wilson, the true stock owner, in the case, supra. In the case, supra, the corporation had already paid the accrued dividends to one who was not the true owner. Wilson, the true owner, had knowledge of his ownership and possession, but neglected for 20 years to claim the accrued dividends. In the case at bar

Swatek had forgotten his ownership. In principle there is no distinction in the two cases. The Colorado court said:

"We do not think the statute of limitations may be interposed as to dividends declared on Wilson's stock and not paid. That the stock was preferred, and the certificates contained a provision to the effect that, before dividends can be declared and paid on common stock, dividends at a certain rate shall be paid on the preferred stock, is not sufficient, in the circumstances of the record, to warrant a different conclusion. Certificates evidencing the preferred stock, while definitely providing dividends as to rate, made no provision as to time when there should be declaration and payment. As already noted, not until October, 1934, was Wilson advised that dividends had been declared upon his stock, and his demand therefor was of December 15, 1934. 'The trusteeship of a corporation for its stockholders is that of an acknowledged and continuing trust. It can not be regarded of a different character. It arises out of the contractual relation whereby the corporation acquires and holds the stockholder's investment under express recognition of his right and for a specific purpose. It has all the nature of a direct trust, to which, it is generally held, statutes of limitation have no application until there is a clear and unequivocal disavowal of the trust, and notice of it brought to the cestui que trust. . . . There can be no substantial difference between the trusteeship of a corporation as it relates to the stock of a shareholder and its duty to him in respect to the profits or dividends upon his stock. He is under no obligation to draw or demand his dividends within any prescribed period. He may leave them with the corporation, if he chooses, and be under no default. The debt which a declared dividend creates on the part of the corporation to the stockholder is one payable only on demand, as is the obligation of a bank to its depositors. It is not subject to limitation until there has been a demand upon the corporation and a refusal to pay.' Yeaman v. Galveston City Co., 106 Tex. 389, 167 S.W. 710, 723, Ann. Cas. 1917E, 191."