[Sac. No. 2143. In Bank.—November 1, 1915.]

## JOSEPHINE ELTINGE, Respondent, v. JESSE SANTOS, Appellant.

PUBLIC HIGHWAY—DEDICATION BY FILING MAP—ACCEPTANCE BY THE PUBLIC—REVOCATION OF DEDICATION BY FILING SUBSEQUENT MAP.— A dedication of a public highway from the filing by the owner of a map indicating the portion of the land to be used as a highway is not irrevocable until accepted by the public either by formal action of the authorities or user by the public, and until such acceptance the offer to dedicate may be revoked by the filing of a second map changing the character of the portions indicated on the first map as a highway.

ID.—USER BY PUBLIC—EVIDENCE AGAINST USER.—The presence of a flag pole and telegraph pole on the parcel of land indicated on the map as a street, making the use of the land as a street impossible, tends to establish the fact that the dedication was not accepted by user of the street by the public.

ID.—EASEMENTS—SALE OF LAND ABUTTING ON STREET SHOWN ON MAP.— A sale of a lot of land with reference to a map showing the lot as bordering on a street, before the recordation of the map which was subsequently recorded, creates an easement in favor of the purchaser of the lot as against the parcel of land shown on the map as a street.

ID.—ESTOPPEL BY SILENCE—CONSTRUCTION OF BUILDINGS ON SUPPOSED
    HIGHWAY—RECORDATION OF MAP.—Even if the knowledge of the
    tenant that expensive structures are being built upon the land
    against which the easement exists can be imputed to the owner,
    no estoppel against asserting the easement is created against the
    owner where the map creating the easement is recorded and the
    facts establishing the easement are available alike to everyone,
    because, as the owner of the lot claiming the easement is under no
    duty to protest, his silence cannot be made the basis of an estoppel.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

Maddux & Maddux, Griffin & Carlson, and R. R. Fowler, for Appellant.

L. L. Dennett, and J. M. Walthall, for Respondent.

MELVIN, J.—Defendant appeals from a judgment adverse to him and from an order denying his motion for a new trial.

The action was one to quiet title to plaintiff's land, to declare two certain buildings erected by defendant on a strip of land northwest of plaintiff's property a nuisance as being on a public street; to require the removal of said buildings; to enjoin defendant from interfering with plaintiff's access to the street on which it was alleged the said buildings had been placed, and for damages. The court granted all of the relief prayed for, except the money asked by way of damages.

Plaintiff's land and that claimed by defendant belonged originally to J. W. Mitchell. In 1873 he filed a map of the townsite of Turlock, showing certain streets and subdivided lots, and also a railroad reservation. One of the streets, "Main Street" by name, passed in a northeasterly and southwesterly direction between the subdivided blocks, being eighty feet in width until it reached "Front Street," which was at right angles to it. Southwest of Front Street were three so-called blocks, one of them only partly outlined on the map, and the other two not subdivided. These joined the railroad reservation on the southwest and were marked "Ware," "House," "Reservation," and two of them—the ones designated as "House" and "Reservation"—were bounded on the

northeast by Front Street.　These two were each two hundred and seventy-five feet in their longest dimension along Front Street and along the line of the railroad's property, while the subdivided lots were three hundred feet long.　This made the space between "House" and "Reservation" blocks (which would be the extension of Main Street after crossing Front Street) one hundred and thirty feet in width.　Plaintiff asserted and the court found that she owned and was entitled to possession of certain property, including that part of "Reservation" block on the line of Main Street as said street is shown upon the original map.

J. W. Mitchell died in 1893 and the Fin de Siecle Investment Company became the owner of all of his property.　On June 11, 1903, that corporation filed a new map of an addition to the town of Turlock, but indicating also the property here in controversy.　By this map Main Street is shown as being of a uniform width of eighty feet and as extending across the railroad track.　This was the first evidence to anyone examining the record that the Fin de Siecle Investment Company asserted title to the land now claimed by defendant, because the deed to the corporation of Mitchell's former interest in the section of land had been general in its terms and had not included this property by special description. The strips twenty-five feet in width added to parcels originally marked "House" and "Reservation" were for the first time delineated on the new map as parts of said blocks.

On December 4, 1905, the Fin de Siecle Investment Company conveyed the lot twenty-five by seventy-five feet adjoining "Reservation" block to W. M. Coward, defendant's predecessor in interest, who deeded it to defendant on December 1, 1906, for $950.　On the tenth day of July, 1906, and before the incorporation of the city of Turlock, the board of supervisors of the county of Stanislaus accepted and published an official map of that county.　On that map the lot in question and the similar lot opposite are shown as parts of the respective blocks and not as portions of Main Street.　During March, April and May, 1907, defendant constructed on fifty feet of his lot a building which cost six thousand dollars, and in April, May and June, 1908, on the remaining twenty-five feet he put up another building at a cost of two thousand five hundred dollars. The court also found that during the time in which defendant

was constructing the buildings on said land and during the time he has maintained them, plaintiff owned the adjoining land claimed by her; that it was leased for a small rental by tenants who constructed a warehouse thereon; that these tenants had full knowledge of defendant's activities in erecting the buildings on the land claimed by him, but that plaintiff only knew of any operations on said premises while the second building was in course of construction. There were findings to the effect that neither the plaintiff, her predecessors, nor her tenants had ever used for ingress or egress the strip of land to which defendant asserts ownership. By the findings it is also established that from the time of his purchase thereof, defendant has been assessed for and has paid all taxes, including irrigation district taxes as well as county, city, and school taxes; that the officers of the county and the general public had actual knowledge of the occupancy by defendant of the property and his claim of ownership; and that no objection was made by any official to his use thereof; that the strip of land twenty-five by seventy-five feet claimed by defendant was never used for any purpose until he built upon it; that there was never any general travel over it, although it was open and not inclosed; and "that until the construction of the building by the defendant a telegraph pole and a flag pole stood at about the northeasterly corner of the building of defendant." Plaintiff, according to the findings, has not, and never had, any interest in the said strip. Main Street is physically eighty feet wide throughout its length, and the buildings of defendant in no wise interfere with the use of said eighty feet. The court also found "that the premises and lands of plaintiff were conveyed to her according to the original map of Turlock; that said map was filed by and consented to by the owners of the land upon which Main Street was laid out, and that the owners of the land upon which Main Street was laid out and by whom said map was filed were at the time the owners of the land thereafter conveyed to plaintiff, and plaintiff derives her title to said land through said persons, and neither she nor her predecessors in interest have ever relinquished or conveyed away their right to have Main Street kept open and maintained as delineated upon said map." There were findings that the existence of the buildings depreciated the value of

plaintiff's property and that the statute of limitations did not bar plaintiff's action.

Among the conclusions of law was one that the strip of land in question was a portion of a public highway and that defendant was unlawfully in possession thereof. Another was as follows:

"That irrespective of the existence of said strip of land as a portion of the public highway, the said plaintiff, by reason of the conveyance to her of her said premises, in accordance with said plat, has acquired an easement over said strip of land and the right to have the same kept free from all obstructions of every kind and character, and to have thereover ingress and egress to and from her said premises without let or hindrance, and to remove and have removed all obstructions therefrom."

The findings do not support the conclusion that there was an irrevocable dedication of the strip of land in question to the public as part of a street. The filing of the map showed an intention to dedicate, but nothing more, while the filing of the later map by the investment company, Mitchell's successor, evidenced an intention to withdraw the offer. Public dedication is a matter between the owner and the public—not between the grantor and his vendees. The public by use or by formal action on the part of the proper authorities may accept an offer of dedication of a park or street. (*City of Los Angeles* v. *Kysor,* 125 Cal. 466, [58 Pac. 90]; *City of Anaheim* v. *Langenberger,* 134 Cal. 608, [66 Pac. 855].) It is undoubtedly true that a vendor may be estopped to deny dedication when he has sold property to individuals on the faith of a recorded map. Many of the authorities so holding are cited and analyzed in the recent case of *Davidow* v. *Griswold,* 23 Cal. App. 189, [137 Pac. 619]—a case in which a petition for hearing in this court was denied. But in this case the facts found indicate not only that the land in controversy was not used as a street, but that a part of it could not be so used, owing to the existence of the flag pole and telegraph pole at the corner of the space afterward occupied by Mr. Santos' building. So far as the public was concerned, Mitchell's successor had the right to revoke the offer of dedication if it had not been accepted either formally or by user. (*Schmitt* v. *San Francisco,* 100 Cal. 307, [34 Pac. 901].) This was done by the filing and recording of the map in June,

1903, showing Main Street as of a uniform width of eighty feet.

But the matter of plaintiff's private easement is one entirely different. Her predecessors in interest bought their property by the Mitchell map. True, the first deeds passed before the map was recorded, but the descriptions referred to the map and recognized the existence of Main Street as delineated thereon. The subsequent recordation of the said map bound Mitchell and his successors so far as the sales to private individuals are concerned. It is not material that for many years a warehouse was maintained on the property now owned by plaintiff immediately adjoining the strip of land now claimed by defendant and that said warehouse had no opening toward Main Street. Neither is it of any consequence that said strip of land had never been used by any owner of "Reservation" block. At the time plaintiff purchased the property both parcels were vacant and there was nothing of record to show an adverse claim to the easement which her predecessors had acquired many years before, except the map of the Fin de Siecle Investment Company, which did not avail against her private right. We are of the opinion that the conclusion of law with reference to the existence of an easement, which we have quoted above, is justified by the findings and that the findings upon which it is based are supported by the evidence. (See *Danielson* v. *Sykes*, 157 Cal. 689, [28 L. R. A. (N. S.) 1024, 109 Pac. 87].)

It is the earnest contention of appellant that the plaintiff is estopped from asserting her right to the easement in question because without objection she permitted valuable improvements to be constructed by him in good faith upon the property which he believed to be his own. The court found that plaintiff's property was in the possession of her tenants during the period of the construction of the buildings by defendant. It was further found: "That the plaintiff does not reside in the city of Turlock, but resided in the state of Washington at the time of the construction of the first building and had no knowledge thereof, but was for a short time in the town of Turlock at or some time during the time of the construction of the second building, and her only notice or knowledge of such construction was derived from a brief visit at said time to Turlock."

We know of no principle of law which charges a landlord with the knowledge of tenants in a case of this kind. The tenants were not bound to protect the easements appertaining to the land occupied by them nor to communicate to Josephine Eltinge the news that buildings were in course of construction on the land adjoining her property; but even if we regard their knowledge as hers and consider that she occupied the same position as that which would have been hers had she been personally upon her land during the erection of both buildings, nevertheless we do not see how she would have forfeited her rights by failing to protest against the acts of the defendant before the completion of the buildings. The rights of plaintiff depended upon matters of record which were equally open to the knowledge of both the plaintiff and the defendant. "An estoppel cannot exist where the knowledge of both parties is equal and nothing is done by the one to mislead the other." (Elliott on Roads and Streets, pp. 669, 670, quoted in *Webb* v. *Demopolis*, 95 Ala. 116, 136, [21 L. R. A. 62, 13 South. 289].) The same principle is announced in *San Leandro* v. *Le Breton*, 72 Cal. 170, 177, [13 Pac. 405], and in *Wolfe* v. *Town of Sullivan*, 133 Ind. 335, [32 N. E. 1017]. In the *Carolina Central R. R. Co.* v. *McCaskill*, 94 N. C. 746, 754, the court said: "Mere silence while a trespasser is improving real estate as if it were his own, while it may sustain a claim for the value of such improvements made in good faith cannot be allowed to transfer the property itself to the usurping occupant." So, in this case, mere silence on the part of the owner of the easement did not confer her title upon the builder of the houses upon the strip of land adjoining her own. Bigelow further states the rule in the following language (page 660) : "It is settled law that standing by in silence will not bar a man from asserting a title of record in the public registry or other like office, so long as no act is done to mislead the other party; there is no duty to speak in such a case." Undoubtedly one is culpable who by his silence leads another to believe in the existence of a state of facts in reliance upon which the other acts to his prejudice. Such person is estopped by silence. (16 Cyc. 684; *Tobias* v. *Morris*, 126 Ala. 535, 551, [28 South. 517] ; Bigelow on Estoppel, 6th ed., 648.) But there must be something willful or culpable in the silence, which allows another to place himself in an unfavorable position on the

faith or understanding of a fact which the person remaining silent can contradict. This is the doctrine of *Pickard* v. *Sears*, 6 Ad. & El. 469, [112 Eng. Reprint, 179], which is discussed in the text of Bigelow cited above. The silence of plaintiff in the case before us did not deprive Mr. Santos of any information which she was bound to give him. Her title was a matter of record as much open to his knowledge as to hers.

No other assignments of error require notice.

As the judgment is not affected by the erroneous conclusion of law that the area involved is part of a public street, the judgment and order are affirmed.

Shaw, J., Henshaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.