**PURCELL BANK & TRUST CO. OF PURCELL et al. v. BYARS.**

No. 8227—Opinion Filed Aug. 14, 1917.

(167 Pac. 216.)

1. **Eminent Domain — Railroad Right of Way—Award—Appeal.**

In order to perfect an appeal from an award of damages by referees, under the provisions of section 15, Act. Cong. Feb. 28, 1902, c. 134, 32 Stat. 43, a petition must be filed by the party dissatisfied with such award in a court of competent jurisdiction, and summons to the adverse party issued thereon within ten days from the return of such award.

2. **Limitation of Actions—Liability of Clerk of Court.**

A cause of action against a clerk of the district court for moneys of litigants received by him in his official capacity accrues and the statutes of limitation begin to run upon the conversion of such moneys by the clerk; the person entitled thereto being under no disability. Such conversion may arise upon his refusal to turn over the money upon demand or upon his failure to turn over the money to his successor upon going out of office.

3. **Limitation of Actions—Demand—Delay.**

Where a demand is required to perfect a cause of action, such demand must be made within a reasonable time, and the party entitled to make demand cannot extend the running of the statutes of limitation by delay in making demand.

(Syllabus by Rummons, C.)

Error from District Court, McClain County; F. B. Swank, Judge.

Action by Catherine Byars against the Purcell Bank & Trust Company of Purcell and A. F. Tooley Judgment for plaintiff, and defendants bring error. Reversed.

Chas. G. Moore and Chas. L. Moore, for plaintiffs in error.

Franklin & Mauldin, for defendant in error.

Opinion by RUMMONS, C. This is an action against the sureties upon the official bond of J. G. Siler as clerk of the district court of McClain county. The record discloses that the defendant in error, hereinafter styled the plaintiff, was the owner of a tract of land situate in the Indian Territory and what is now McClain county; that on April 18, 1916, the Oklahoma Central Railway Company instituted proceedings in the United States Court for the Southern District of the Indian Territory, at Purcell, to condemn a right of way across the lands of plaintiff. The United States Court appointed referees to appraise the damages, and such referees awarded to the plaintiff the sum of $657.17. The report of the referees was filed May 14, 1906. The Oklahoma Central Railway Company forthwith deposited with the deputy clerk of the United States Court at Purcell the amount of the award. On May 22, 1906, the plaintiff, being dissatisfied with the amount of the award, undertook to appeal therefrom by filing what is denominated an original petition in the United States Court for the Southern District, at Purcell. Summons issued on the petition November 13, 1906. The cause was transferred to the district of McClain county at the time of statehood, and on October 15, 1908, the service of summons was quashed by the district court of McClain county. No alias summons was ever issued. On May 18, 1915, the plaintiff caused this action to be dismissed and on May 19, 1915, brought the instant suit upon the bond of J. G. Siler. Siler was elected clerk of the district court, qualified by executing the bond herein sued on, and took office on November 16, 1907. His term of office expired on January 9, 1911, and he died in February, 1911. The amount of the award to plaintiff was turned over to Siler upon his taking office by the clerk of the United States Court of the Southern District. Siler failed and neglected to turn the money over to his successor upon retiring from office. The defendants demurred, and such demurrer was overruled, defendants excepting. The defendants then pleaded the general issue, but admitted the execution of the bond sued on and the incumbency of Siler as clerk of the district court of McClain county during the period above stated. The defendant further pleads the statutes of limitation as a bar to this action; pleaded that the plaintiff by her act in filing her original petition in the United States Court did not take an appeal from the award of the referees in the condemnation proceeding, for the reason that no summons was issued upon said petition within ten days from the filing of the report of the referees. The defendants further pleaded as a bar to this action the failure of the plaintiff to file a claim with the administrator of the estate of J. G. Siler, deceased, within the period of limitation for filing such claims. The plaintiff demurred to that part of the answer of the defendant which pleaded the statutes of limitation, the failure to take an appeal, and the failure to file a claim with the administrator. This demurrer was sustained, to which the defendants excepted. Plaintiff had judgment, to reverse which defendants prosecute this proceeding in error.

The question necessary to be determined in this case is whether the action of plaintiff was barred by the statutes of limitation. There seems to be no controversy between plaintiff and defendants that the action would be barred three years after the cause of action arose. The time when the cause of action arose is the point in controversy. It is contended on behalf of the defendants that plaintiff was entitled to demand this money at any time after the approval by the United States Court of the report of the referees which was on May 13, 1907, and that in any event plaintiff's cause of action arose upon the failure of Siler to turn this money over to his successor when he retired from office on January 9, 1911, and that the statutes of limitation were then set in operation. On the other hand, it is contended on behalf of the plaintiff that her cause of action did not arise until a demand was made by her for the delivery of this money, and that she could not rightfully demand the money from the clerk during the pendency of an appeal from the award made by the referees in the condemnation proceeding; that this appeal was pending until dismissed on May 18, 1915; and that the statutes of limitation did not commence to run until that date.

The condemnation proceedings were instituted under the provisions of the act of Congress of February 28, 1902 (32 Stat. 43), commonly known as the Enid & Anadarko Act. Section 15 of said act, among other things, provides:

"Any party to the proceedings who is dissatisfied with the award of the referees shall have the right, within ten days after the making of the award, to appeal, by original petition, to the United States court, or (any) other court of competent jurisdiction, sitting at the place nearest and most convenient to the property sought to be taken, where the question of the damages occasioned by the

taking of the lands in controversy shall be tried de novo, and the judgment rendered by the court shall be final and conclusive, subject, however, to appeal as in other cases."

Said section further provides:

"When the award of damages is filed with the clerk of the court by the referees, the railway company shall deposit the amount of such award with the clerk of the court, to abide the judgment thereof, and shall then have the right to enter upon and take possession of the property sought to be condemned."

This act of the Congress granted the right of way through Oklahoma Territory and Indian Territory to the Enid & Anadarko Railway Company and made specific provisions as to that company. The act proceeds in sections 13 to 23, inclusive, to enact general provisions to enable any railway company to secure right of way for the construction of its railroad through the Indian Territory. The provisions of the act as to assessment of damages occasioned by the construction of the Enid & Anadarko Railway through lands held by individual occupants is found in section 3 of said act. It is provided that three referees are to be appointed, one by the Secretary of the Interior, one by the principal chief of the nation to which the occupant belongs, and one by said railway company. It is also provided that:

"Either party being dissatisfied with the finding of the referees shall have the right, within 90 days after the making of the award and notice of the same, to appeal by original petition to the United States Court for the Indian Territory, which court shall have jurisdiction to hear and determine the subject-matter of said petition, according to the laws of the (Indian) Territory in which the same shall be heard provided for determining the damage when property is taken for railroad purposes."

It appears that in this act the word "appeal" is used in describing the action to be taken by the parties dissatisfied with the award of the referees, both in the provisions with reference to the Enid & Anadarko Railway and in the provisions with reference to other railway companies. The same method of action by the party dissatisfied, that is, by filing an original petition, is provided in both cases. In the one case exclusive jurisdiction is given to the United States court, while in the other concurrent jurisdiction is given to any other court of competent jurisidiction most convenient to the property sought to be taken. It is contended on behalf of the plaintiff that she, having filed her petition within the time limited, has done all that was required of her to do to take her appeal from the award of the referees, and that she was not required to cause summons to be issued in order to have the appeal pending. Counsel for defendants, however, contend that the word "appeal" as used in the Enid & Anadarko Act has not its technical legal meaning, but that it means to apply or ask and that the act contemplated that an independent action should be commenced by the party aggrieved by the award. We think the construction contended for by counsel for defendants is correct. It is apparent that the word "appeal" is not used in its technical sense in this act, since the method provided consists of the filing of the original petition by the party aggrieved. and not by filing a transcript of the proceedings of the referees. As to the Enid & Anadarko Railway Company, the act provides that upon the filing of the original petition it shall be heard and determined according to the laws of the Indian Territory in which the same shall be heard. As to other railway companies, the act is silent as to the procedure. The laws of Arkansas were in force in the Indian Territory at that time. and it is provided in section 4967, Mansfield's Digest, that:

"A civil action is commenced by filing in the office of the clerk of the proper court a complaint and causing a summons to be issued thereon."

We take the view that in either case it is necessary for the party aggrieved by the award to commence an action to have the amount of the damages ascertained by the court. In the case of Enid & Anadarko Railway Company seeking to condemn lands for right of way, there was no action in any court provided for until after the award of the referees, so that it is apparent that it would be necessary for the party aggrieved by the award to bring the adverse party into some court of competent jurisdiction under the procedure in force in the Indian Territory. This necessarily contemplated the commencement of an action involving the issuing of a summons. In the case of other railway companies condemning right of way, the same language as to appeal is used, and it is apparent from the language of the act that the original petition provided for is not to be filed in the action by the railway company to condemn right of way and to appoint referees to appraise the damages. but that it is to be an independent action. since jurisdiction is granted not only to the United States Court which has jurisdiction of the condemnation proceedings, but to other courts of competent jurisdiction as well. So that in order to give the court in which

the petition was filed jurisdiction, it was necessary that summons issue to the adverse party. If the act provided that the petition for appeal be filed in the action for condemnation, the adverse party would be required to take notice of such appeal, but they cannot be required to take notice of the filing of a petition in another action and in another court. In the instant case the condemnation case was docketed as No. 862, and the original petition of plaintiff was docketed as No. 894. We conclude that it was the duty of the plaintiff, being dissatisfied with the award of the referees, in order to have the amount of her damages determined by a court, to commence an action seeking such damages as she might be entitled to against the railway company within ten days from the making of the award. In so commencing an action it was necessary that she cause summons to be issued upon her petition. There having been no summons issued upon such petition until after the expiration of the time allowed by the act of Congress, there never was an action pending, and the running of the statutes of limitation was not suspended thereby.

Upon the question of when a cause of action accrues in favor of an individual against the clerk of a court or an officer who holds money of an individual in his official capacity the authorities are not entirely harmonious. We think, however, that the consensus of opinion of the courts of last resort is that the cause of action accrues and the statutes of limitation begin to run upon the conversion of the funds by the clerk or officer. Furman v. Timberlake, 93 N. C. 66; McDonnell v. Branch Bank, 20 Ala. 313; Bantley v. Baker, 61 Neb. 92, 84 N. W. 603; Barker v. Wheeler, 60 Neb. 470, 83 N. W. 678, 83 Am. St. Rep. 541; Lower v. Miller, 66 Iowa, 406, 23 N. W. 897. The conversion of the funds by the clerk or officer may arise upon his refusal to turn over the money upon demand or upon his failure to turn over the money to his successor upon going out of office. The rule is also well established that the failure of an officer to pay over moneys in his hands to the party entitled thereto at the time he is required by law so to pay the same constitutes a conversion of such funds, and that in such case the cause of action accrues, and that the statutes of limitation begin to run without a demand. Little v. Richardson, 51 N. C. 305; Moore v. State, 55 Ind. 360; State v. Dailey, 4 Mo. App. 172.

Section 4286, Rev. Laws 1910, provides:

"Upon the death, resignation, suspension or removal from office of any officer, or upon the expiration of his term, all public moneys, books, records, accounts, papers, documents and property of other kind in his hands or held by him by virtue of his office shall be delivered to his successor."

This section of our statutes imposed the duty upon J. G. Siler to turn over at the expiration of his term, to his successor in office, all public moneys, all books, records, documents and property in his hands by virtue of his office. It thereby became the duty of Siler upon the expiration of his term of office to turn over to his successor the money deposited with him for the use and benefit of the plaintiff. Not having done so he thereby converted the same and became liable to an action therefor. At this time he is presumed to have converted the money, and the statutes of limitation began to run.

It is urged by counsel for plaintiff that Siler in the instant case was a trustee for plaintiff, and that he held the money sought to be recovered under an express trust, and that the rules of law as to the limitation of actions between cestui que trust and trustee should be applied to the instant case. We think counsel for plaintiff is in error as to the proposition that Siler held these funds in trust. It is generally held that the clerk of a court holds funds paid to him in an official capacity for litigants as a bailee, and that he is a depository of the funds. 5 R. C. L. 630. The distinction, however, is not material, since either in case of a trustee or a bailee a demand would set the statutes of limitation in motion, and the rule is that when a demand is required to perfect a cause of action, such demand must be made within a reasonable time. The party entitled to make demand cannot extend the running of the statutes of limitation by delay in making demand. First National Bank v. King, 60 Kan. 733, 57 Pac. 952; Atchison, Topeka & S. F. Ry. Co. v. Burlingame, 36 Kan. 628, 14 Pac. 271, 59 Am. Rep. 578; Rork v. Commissioners of Douglas County, 46 Kan. 175, 26 Pac. 391; Reizenstein v. Marquardt (Iowa) 1 L. R. A. 318, note. So that in the instant case the plaintiff, having permitted the funds to remain in the registry of the court, when she was entitled to demand the same, for a period of nine years. cannot now avoid the bar of the statutes of limitation because she neglected and failed during that period to make a demand for her money.

The trial court erred in overruling the demurrer of defendants to the petition and sustaining the demurrer of plaintiff to the answer of defendants, and in overruling the demurrer of the defendants to the evidence.

The judgment should therefore be reversed.

By the Court: It is so ordered.