COOK v. BINGMAN et al.

No. 32351. April 8, 1947.

*179 P. 2d 470.*

G. R. Horner and H. S. Samples, both of Okmulgee, for plaintiff in error.

Geo. C. Beidleman, John L. Norman, and Cochran & Noble, all of Okmulgee, for defendants in error.

ARNOLD, J. Plaintiff commenced his action in the district court of Okmulgee county August 12, 1941. By the amended petition, upon which the case was tried, he sought judgment for the sum of $40,-000 actual damages and $10,000 punitive damage for the alleged conversion of certain personal property described as oil well drilling tools, equipment and supplies. O. A. Bingman died in June, 1943, and the action was duly revived against his executors, but the case proceeded to trial under the original caption. The allegations of plaintiff's amended petition, and his evidence in support thereof, may be summarized as follows:

Prior to 1928, plaintiff was engaged in oil field drilling operations in the Cromwell field in Seminole county. He was the owner of three complete strings of standard drilling equipment. Some of these tools were used in drilling operations in plaintiff's own name, but a part thereof was used in drilling operations under the name of Micco Oil & Gas Company, a trade name under which plaintiff also operated, but he was the sole owner of all of the tools and equipment. When his drilling operations in the Cromwell field ended he had these strings of tools stacked on a lease near Cromwell with a caretaker in charge. Some time in 1928, the exact date not being disclosed, the sheriff of Seminole county levied upon and advertised these tools and equipment for sale under a personal tax warrant. By an oral arrangement made by plaintiff with one A. Michelson, of Wewoka, the latter purchased these tools and equipment at the sheriff's sale for the sum of $200. Thereafter plaintiff contacted the defendant and arranged with him to have these tools and equipment hauled from the Cromwell field to Okmulgee and stored on a lot there owned by defendant. Defendant paid the cost of hauling this property in the sum of $750. Prior to that time plaintiff was indebted to defendant in various sums of money, some evidenced by promissory notes, and on February 4, 1929, plaintiff made, executed and delivered to one D. M. Smith his promissory note for $5,000, which note Smith immediately endorsed, without recourse, to the defendant. This

$5,000 note represented a merger of all of plaintiff's indebtedness to defendant, including the $750 paid for hauling the property and another item hereafter mentioned paid to Michelson. Seven days after the execution of this $5,000 note, the plaintiff and Michelson went to the office of the defendant in Okmulgee and there Michelson executed and delivered to defendant a bill of sale covering all of this property which Michelson had purchased at the tax sale. There was nothing in the bill of sale to indicate anything other than a straight sale and delivery of the property to the defendant by Michelson. The defendant then paid Michelson $200, being the purchase price at the tax sale, and $25 additional as Michelson's profit on the transaction. Both plaintiff and Michelson testifed that their arrangement was for Michelson to buy in the property at the tax sale with the right in plaintiff to redeem the property and acquire title thereto by paying Michelson the amount for which the property sold at the tax sale plus a reasonable commission or profit. Both testified that Michelson executed the bill of sale to the defendant at the direction of plaintiff, and plaintiff testified that the bill of sale of the property represented a pledge of the property to the defendant as security for the payment of the $5,000 note.

Plaintiff alleged in his amended petition, and testified on the trial, that a short time after the placing of the property on Bingman's lot in Okmulgee and the execution and delivery of the bill of sale to the defendant, plaintiff sold and delivered to defendant certain items of the tools and equipment comprising a complete string of standard drilling tools and equipment in full consideration and payment of the $5,000 note. No demand was made by plaintiff for the cancellation and delivery of said note to him nor did he make any demand for the surrender of the bill of sale held by the defendant evidencing title to all of the property.

Plaintiff's witness, Art Crutchmer, who hauled the property from Cromwell to Okmulgee, testified that he heard the conversation between plaintiff and defendant in reference to the sale of a part of this property in satisfaction of plaintiff's indebtedness, and that immediately thereafter, by direction of defendant, he, Crutchmer, hauled the property so designated from where it had been placed on Bingman's lot to other places designated by defendant; that the remainder of said property remained on the lot for about three years.

In 1931 the defendant made a contract with one A. M. Perrine, representing the Limestone Oil & Gas Company, for the sale on credit to that company of a complete string of standard equipment drilling tools. With the knowledge and consent of plaintiff, Bingman took a part of the property remaining on the lot and added it to other property of his own to complete the full string of standard drilling tools which he had contracted to deliver to the Limestone Oil & Gas Company. The only evidence in the record disclosing what portion of plaintiff's tools were so used to supplement Bingman's tools sold to that company is a statement delivered to plaintiff in 1932 by one of Bingman's sons showing that plaintiff's property represented 52% of the property sold and delivered to the Limestone Company. This property was sold and by Bingman hauled and delivered to the purchaser at a point west of Holdenville by the same Art Crutchmer who hauled it from Cromwell, and he testified that about three years after he hauled the property from Cromwell to the lot in Okmulgee he removed all that remained of said property from said lot at the direction of the defendant and stored it in a stone barn at the edge of the city. This would make it in 1932 that Bingman, the defendant, exercised dominion and control over all of the remainder of plaintiff's said property which had not been sold and delivered to him by plaintiff and which was not included in the sale to the Limestone Oil & Gas Company with plaintiff's consent. In 1940 Bingman sold all of the tools and equip-

ment stored in the stone barn to some purchaser who was shipping them to Cuba, and the same Art Crutchmer did the hauling from the stone barn and the loading onto the railroad cars.

From 1932, when the remainder of the property now claimed by the plaintiff was removed from the lot in Okmulgee and stored in a stone barn by defendant, until the filing of this suit, plaintiff made no demand on the defendant for a return of the pledged property, his only objection, so far as the record discloses, being that which he made to the statement furnished him in 1932 as to his interest in the proceeds of the transaction with the Limestone Oil & Gas Company.

Defendant filed an answer which was quite lengthy and detailed as to the transactions between plaintiff and defendant, but in view of the ground on which the trial court based its decision in the action, it is only necessary here to state that included in defendant's answer was a special plea of the statute of limitation of two years in bar of plaintiff's cause of action.

At the conclusion of plaintiff's evidence defendant demurred thereto on the ground that the evidence showed plaintiff's cause of action to be barred by the two-year statute of limitation, and the trial court sustained the demurrer to the evidence on this ground and dismissed plaintiff's action.

For reversal of the judgment plaintiff argues three propositions in his brief, the substance of which is that the trial court erred in sustaining defendant's demurrer based on the statute of limitation.

In the summary of plaintiff's pleadings and evidence above set forth we have disregarded any conflicts or contrary inferences which might be deduced from the cross-examination of plaintiff and his witness, as we are required to do in passing upon a demurrer to the evidence. Hyde Construction Co. v. Stevenson, 181 Okla. 8, 72 P. 2d 354; Sinclair-Prairie Oil Co. v. Smith, 186 Okla. 631, 99 P. 2d 903. Plaintiff testified that the payment and satisfaction of his $5,000 note to the defendant was made in cash, or its equivalent, about 30 or 40 days after the execution of the bill of sale. The bill of sale executed and delivered in February, 1929, covered the property which plaintiff contended was deposited with defendant as a pledge to secure the payment of the $5,000 note. Under 55 O. S. 1941 § 2, a pledge of personal property is made only as security for the payment of a debt. It is evident, therefore, that when plaintiff paid off and discharged the $5,000 note for which the property is alleged to have been pledged as security the pledge was thereby terminated, and the remaining property belonging to plaintiff and in the custody and control of defendant thereupon ceased to be a pledge but became a gratuitous bailment as defined by 15 O. S. 1941, ch. 11, § 461 for the reason that there is no contention or evidence that there was any contract or agreement between plaintiff and defendant that defendant should receive compensation as bailee.

Under the allegations and proof of plaintiff the last transaction between plaintiff and defendant with reference to plaintiff's property remaining on defendant's lot and in his custody as gratuitous bailee was in 1931, when a sale of a portion of that property was made to the Limestone Oil & Gas Company with the knowledge and consent of plaintiff. Plaintiff and defendant were both residents of Okmulgee and plaintiff had ample means and opportunity for knowing what wrongful acts of dominion, if any, were thereafter exercised by defendant over this remaining property inconsistent with plaintiff's ownership thereof. Yet from 1931 until this suit was commenced in 1941 there is no contention or evidence that plaintiff ever made demand on defendant for delivery of his property so held by defendant as a gratuitous bailee.

Under 15 O. S. 1941, ch. 11, § 448, demand is necessary in order to put the

bailee in default. It is a general rule of law that where demand and default are prerequisites to the bringing of an action the person on whom the duty of demand rests cannot toll the running of the statute of limitations by failure to make such demand. In the case of Purcell Bank & Trust Company of Purcell et al. v. Byars, 66 Okla. 70, 167 P. 216, this court in the third paragraph of the syllabus said:

"Where a demand is required to perfect a cause of action, such demand must be made within a reasonable time, and the party entitled to make demand cannot extend the running of the statutes of limitation by delay in making demand."

To the same effect are State ex rel. Estill v. Board of County Commissioners of Pontotoc County, 119 Okla. 215, 249 P. 394, and Oklahoma City Federal Savings & Loan Ass'n v. Swatek, 191 Okla. 400, 130 P. 2d 514.

12 O. S. 1941 § 95, subd. 3, reads:

"Third. Within two years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud —— the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Since the trial court was called upon to determine the application of this statute to the evidence of the plaintiff, excluding every consideration of inferences and conclusions which might be drawn therefrom favorable to demurrant, the conclusion is inescapable that the trial court was correct in holding that this statute was applicable and that plaintiff's cause of action was barred thereby.

Plaintiff's entire argument on this appeal is predicated upon the theory that the relation of pledgor and pledgee continued to exist after full payment and satisfaction of the debt to secure which the pledge was given. That this theory is erroneous has already been shown herein. Upon termination of the pledge by payment of the debt entirely different statutory provisions defined the legal relations of the parties and entirely different legal principles became applicable. The court correctly held that demand within the statutory period was necessary. Though many years elapsed from the date of the alleged payment of the obligation, no demand for delivery of the property was ever made and no excuse for the unreasonable delay is shown.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and GIBSON, JJ., concur: CORN, J., concurs specially.

CORN, J. (specially concurring). It appears to me the majority opinion, written by Justice Arnold, is based on the wrong theory.

An examination of the case-made at page 251 reflects the theory upon which the trial court sustained the demurrer of the defendant at the close of the evidence of the plaintiff.

"Mr. Horner: They just demurred on the ground of limitations, and you limit it to that? The Court: Yes. Mr. Horner: To which the plaintiff excepts."

Briefly stated, the action is in tort for the conversion of the property which plaintiff claimed and which he claimed to have pledged, and the evidence of the plaintiff conclusively shows that it is barred by the statute of limitations. The defendants did not introduce any evidence.

If the action were not barred by the statute of limitations, the other questions involved herein and the ones which the majority opinion is based upon should be submitted to the jury under proper instructions for its decision.