HILLERS et al. v. LOCAL FEDERAL SAVINGS & LOAN ASS'N.

No. 32335.   March 6, 1951.
Rehearing Denied June 19, 1951.

*232 P. 2d 626.*

Clay M. Roper and Homer Caldwell, Oklahoma City, for plaintiffs in error.

Everest, McKenzie, Gibbens & Crawford, Oklahoma City, for defendant in error.

ARNOLD, C. J.   Albert Heitmann died intestate on September 2, 1930, owning three certificates representing 45 shares of stock, of the par value of $4,500, in the Local Building & Loan Association. C. S. Young was appointed administrator of his estate by the county court of Canadian county. On September 25, 1931, the county court entered a final decree setting over to the heirs, brothers and sisters of the decedent, in equal parts, said shares of stock and other assets. On January 20, 1932, Young was discharged as administrator. While he was acting as such administrator, Young made a demand upon the defendant for withdrawal and for payment of the amount due on the certificates of stock and submitted to it an order by the county court to convert said stock into cash, but because

of the economic depression and the rules governing building and loan associations, the defendant did not then make payment but suggested a plan of payment which would be followed. On August 17, 1934, Local Building & Loan Association, not actually knowing that Young had been discharged as such administrator, issued to him a check for $2,728.13 as partial payment on the stock. On January 28, 1935, upon surrender and cancellation of the stock certificates, which had been in Young's possession until the time of cancellation, it delivered to Young, payable to him as such administrator, two checks, one for $299.32 and one for $627.60, in payment of the balance due on the stock. Young deposited these checks in the bank at Wheatland and testified that he wrote out checks dividing the amounts so collected among the five heirs of the decedent and that the banker was to mail them to the respective parties. The record is silent as to what became of the last named checks, but the heirs did not receive the money due them. After these checks were issued, the Local Building & Loan Association was converted into a Federal institution and became the Local Federal Savings & Loan Association.

Two of the heirs lived in Iowa and three lived in Germany. One of those in Iowa died. On December 19, 1941, the four living heirs and the administrator of the estate of the deceased heir filed a suit against the Local Federal Savings & Loan Association to recover the amount due on said certificates of stock. That suit was dismissed without prejudice on May 6, 1943, and on May 5, 1944, the present action was filed. As one ground of defense, the defendant relied on the statute of limitations.

The plaintiffs plead and argue that it was a fraud upon them for defendant to pay the amount due to Young after he was discharged as administrator, that they did not discover the fraud until within two years prior to the commencement of the first action; that 12 O. S. 1941 §95 (3) is the applicable statute of limitations; that their action is not barred since their cause of action accrued less than two years prior to the filing of the first action, and that since that action failed otherwise than on its merits the present action was timely filed under 12 O. S. 1941 §100.

After the case was tried, the cause was dismissed as to the three heirs residing in Germany, presumably because as alien enemies they were prohibited from prosecuting a suit in the courts of this country.

Judgment was rendered for the defendant, and from that judgment Annie Hillers, one of the heirs residing in Iowa, and L. F. Kruse, administrator of the estate of Henry Heitmann, deceased heir who also resided in Iowa, have perfected this appeal.

The pertinent facts in this case can be summarized as follows:

Albert Heitmann owned 45 shares of defendant's stock;

He died September 2, 1930;

C. S. Young was appointed administrator October 4, 1930;

On May 25, 1931, he demanded redemption of the stock by defendant and delivered copy of letters and copy of order of court authorizing the conversion of the stock to cash;

The building and loan company acknowledged the obligation and suggested a plan of future payment which was acceded to by the administrator and followed by it;

His final account was approved September 25, 1931, and he was discharged January 20, 1932;

Stock certificates were surrendered and final payment made thereon to administrator January 28, 1935;

Plaintiffs brought suit December 19, 1941.

The cause of action for the establishment and enforcement of the liability

of the building and loan company to the representative of the estate of Heitmann or the heirs of his stock is statutory and accrued when suit could have first been brought against the defendant under and by virtue of the statute. Baker v. Tulsa Building & Loan Ass'n, 179 Okla. 432, 66 P. 2d 45.

Section 9800, of O. S. 1931, in force from the time of decedent's purchase of the stock until and after his death provides in part:

"Upon the death of a stockholder, his legal representative shall be entitled to receive the full amount paid in by him and legal interest thereon, first deducting all charges that may be due on the stock."

The building and loan company is a special sort of financial institution that issues stock to those who make regular payments of money to it for the purpose of investment. In some respects it is much like a partnership. Provision is made by law and the by-laws of the company for withdrawal by a stockholder. In withdrawing the stockholder is bound by applicable law and the rules of the company. The Legislature, either thinking that the law and the rules of the company did not apply to a stockowner by inheritance or to the representatives of an estate or desiring to fix a different method of withdrawal, passed the foregoing statute. It surely was not the intention of the Legislature to subject the building and loan company to a suit immediately after the death of a stockholder and without demand to it. The building and loan company should be given an opportunity to meet its statutory, fixed obligation before it is sued. Suppose the foregoing statute provided that in case suit was brought a 25 per cent attorney's fee might be allowed; would we then say that suit could be brought immediately upon the death of the stockholder and without demand upon the company for payment? The building and loan company is obliged to and does keep very accurate records of all monies received by it for investment and can very easily and accurately at any time figure its statutory liability upon the death of one of its stockholders. Such claims as here presented are never stale claims and a statute of limitation should not be applied on such claims unless it is imperative to do so.

The foregoing statute fixing the liability of the building and loan company to the representative of the heirs of a stockholder upon his death, though creating a sort of creditor-debtor relationship, actually creates in law a cash deposit of the money paid in by the stockholder during his lifetime with interest thereon. Like money deposited in a bank, this amount of money is subject to withdrawal on demand. The relationship between the building and loan company and the representative of the heirs or the heirs as stockowners, as distinguished from stockholders, is like that of a partnership or trust relationship. No statute of limitation would begin to run on the claim for this fixed statutory liability until a demand for payment is made and refused unconditionally. Demand was made in this case but payment was not refused— instead of refusing payment the company, for various reasons, suggested that payment would be made in order of demand in like cases which amounted to an acknowledgment of the validity of the claim. In this connection, it is asserted by counsel for the company that "Local wrote C. S. Young on May 11, 1931, advising that each stockholder would be paid in the order in which his notice was received to withdraw funds because of the existing period of depression and readjustment." The evidence conclusively shows that the method and time of payment suggested by the building and loan company was acceded to by the administrator. The legal effect of this was to withdraw the demand for immediate payment, leaving the parties in the same relationship that existed immediately after the death of the stockholder or that created by the suggested plan of payment which was attempted to

be followed by the building and loan company. The applicable statute of limitation that would have started running upon demand and unconditional refusal to pay never began to run.

The building and loan company contends that it had no interest in the Heitmann estate and would therefore not be chargeable with notice of the discharge of Young as administrator or the settlement of the estate. This argument is made to bolster up its theory that Young was the agent of the heirs in receiving payment because he had the stock certificates which it says constituted apparent authority to accept payment. As was hereinbefore pointed out, the building and loan company paid Young relying on the assumed fact that he was still the administrator and as such was entitled to receive payment. It is true that one who clothes another with apparent authority to do an act will not be heard to deny the authority, though it did not in fact exist, if the adverse party had relied on the indicia of authority to his detriment. Here, however, the building and loan company carelessly assumed that Young was still administrator and for that reason was the representative of the estate and it paid on this basis. No act of the heirs produced that assumption on the part of the building and loan company. The necessary elements of estoppel do not exist under all the circumstances.

Conceding for the sake of argument, but without deciding, that laches may be a defense in a law action under certain circumstances, no claim has ever been asserted for interest on the fixed statutory liability. The company suffered no detriment from the long delay in bringing this action and cannot disclaim its statutory liability because of laches. Laches is delay which works a disadvantage to another and causes a change of condition or relation during the delay which is detrimental. Oklahoma City Federal Savings & Loan Ass'n v. Swatek, 191 Okla. 400, 130 P. 2d 514.

The first time that a demand was made to pay and same refused was when the lawyer for the heirs demanded payment just before the suit forerunning this one was filed. No statute of limitation had started running before that time. That suit was filed December 19, 1941, The present suit was filed within one year of the dismissal of the former suit without prejudice and failure otherwise than on the merits.

Good faith is generally regarded as requiring the exercise of reasonable diligence to learn the truth, and, accordingly, estoppel is denied where the party claiming it was put on inquiry and had available means of ascertaining the true state of facts. He who claims the benefits of an equitable estoppel on the ground that he has been misled through the conduct of another must not have been misled through his own want of reasonable care. Bradley v. Andrus, 107 F. 196, 53 L.R.A. 432. Ordinarily, the courts refuse to give effect to an estoppel where the parties were equally well informed as to the essential facts or where the means of knowledge were equally open to them. Oklahoma v. Texas, 268 U.S. 252, 69 L. Ed. 937, 45 S. Ct. 497. A distinction is sometimes made as to the duty of exercising diligence to learn the truth between cases where the claim of estoppel is based on mere silence or inaction, as here, and those where it is based on affirmative representation or conduct, the view being taken that the availability of a means of knowing the true state of facts, as by reference to the public records, bars a claim of estoppel in cases of the former class. Eltinge v. Santos, 171 Cal. 278, 152 P. 915; Davidson v. Jennings, 27 Colo. 187, 60 P. 354, 48 L.R.A. 340, 83 Am. St. Rep. 49; Cox v. Simmerman, 243 Ky. 474, 48 S. W. 2d 1078; Williams v. Reid (Mo.) 37 S. W. 2d 537; Crest v. Jack, 3 Watts (Pa.) 238, 27 Am. Dec. 353; Peterson v. Bergman Cabinet Mfg. Co., 145 Wash. 664, 261 P. 381, 55 A.L.R. 989; but not those in the latter class; Graham v. Thompson, 55 Ark. 296, 18 S.W. 58, 29 Am. St. Rep. 40; Wester-

man v. Corder, 86 Kan. 239, 119 P. 868, 39 L.R.A. (N.S.) 500, Ann. Cas. 1913C, 60. See, also, Pierce v. Jones et al., 182 Okla. 515, 78 P. 2d 677; Martin Coal & Coke Co. et al. v. Brewer, Rec., et al., 185 Okla. 169, 90 P. 2d 653.

Reversed, with directions to enter judgment in conformity with the views herein expressed.

WELCH, HALLEY, JOHNSON, and O'NEAL, JJ., concur. LUTTRELL V.C. J., and CORN, GIBSON, and DAVISON, JJ., dissent.

DAVISON, J. (dissenting). I concur in the pronouncement of law contained in the first syllabus, and the reasoning in support thereof in the body, of the opinion of the majority of the court. However, I disagree with, and dissent to, the remainder of the opinion and the conclusion reached thereby, and think that I should express my views.

Reduced to a very condensed statement, the determinative facts and dates in this case are these:

Decedent, while the owner of the building and loan stock, died September 2, 1930;

Final account of his administrator was approved and order of distribution entered September 25, 1931;

Stock certificates were surrendered by, and final payment thereon made to, the discharged administrator January 28, 1935;

There is no evidence whatever indicating other than absolute good faith on the part of the defendant;

This action was filed December 19, 1941.

I think the majority opinion is correct in stating that,

"The foregoing statute fixing the liability of the building and loan company to the representative of (or) the heirs of a stockholder upon his death, though creating a sort of creditor-debtor relationship, actually creates in law a cash deposit of the money paid in by the stockholder during his lifetime with interest thereon."

but I do not agree with the next statement that "Like money deposited in a bank, this amount of money is subject to withdrawal on demand."

The balance of that discussion then confuses the purpose for which the demand is necessary. The demand is not necessary to start the statute of limitations but to perfect a cause of action. Under the assumption that a demand is necessary (and it makes no difference in the result in this case whether it is necessary or not), the plaintiffs could not have filed a maintainable action until the demand was made. Nor could they personally control or extend the time when the period of limitations began, by delay in making such demand.

The rule is stated in 54 C. J. S. 212, as follows:

"Where the demand is a preliminary step referring only to the remedy and not to the right, the action will be barred if the demand is not made within the statutory period."

The payment by the defendant to C. S. Young of the amount of the stock, made on January 28, 1935, was either authorized or unauthorized. If, at that time, Young was authorized to receive the money, payment to him discharged the indebtedness and the defendant's liability was at an end. If, at that time, Young had no authority, he stood in the position of a stranger and the payment to him was a conversion of the funds by the defendant or, at least, a denial of plaintiffs' title to the same. This would start the statute of limitations.

A very analogous situation was before this court in the case of Purcell Bank & Trust Co. of Purcell et al. v. Byars, 66 Okla. 70, 167 P. 216. That was a case wherein the plaintiff sued a former court clerk and the sureties on his official bond for money deposited with him in a previous con-

demnation proceeding involving plaintiff's lands. The defendant court clerk had failed to turn this money over to his successor in office as required by statute and nine years later plaintiff brought the action. The statute of limitations was interposed as a defense. Plaintiff recovered judgment which was reversed on appeal. In deciding the case, this court said:

"It is urged by counsel for plaintiff that Siler in the instant case was a trustee for plaintiff, and that he held the money sought to be recovered under an express trust, and that the rules of law as to the limitation of actions between cestui que trust and trustee should be applied to the instant case. We think counsel for plaintiff is in error as to the proposition that Siler held these funds in trust. It is generally held that the clerk of a court holds funds paid to him in an official capacity for litigants as a bailee, and that he is a depositary of the funds. 5 R. C. L. 630. The distinction, however, is not material, since either in case of a trustee or a bailee a demand would set the statutes of limitation in motion, and the rule is that, when a demand is required to perfect a cause of action, such demand must be made within a reasonable time. The party entitled to make demand cannot extend the running of the statutes of limitation by delay in making demand. First National Bank v. King, 60 Kan. 733, 57 P. 952; Atchison, Topeka & S. F. Ry. Co. v. Burlingame, 36 Kan. 638, 14 P. 271, 59 Am. Rep. 578; Rork v. Commissioners of Douglas County, 46 Kan. 175 26 P. 391; Reizenstein v. Marquardt (Iowa) 1 L. R. A. 318, note. So that in the instant case the plaintiff, having permitted the funds to remain in the registry of the court, when she was entitled to demand the same, for a period of nine years, cannot now avoid the bar of the statutes of limitation because she neglected and failed during that period to make a demand for her money."

This same rule has been reaffirmed and followed numerous times since. In the recent case of Cook v. Bingman et al., 198 Okla. 421, 179 P. 2d 470, the defendant held property belonging to plaintiff as a bailee. Plaintiff sought to recover his property and defendant relied upon the statute of limitations. This court on appeal affirmed judgment for defendant holding:

"A gratuitous bailment with no duration specified may be terminated by the bailor at any time by demand for possession of his property, and a refusal thereof by the bailee constitutes a conversion.

"When demand and refusal are necessary to constitute a conversion of bailed property, such demand must be made within a reasonable time, not beyond the period of limitations prescribed by statute."

In the body of that opinion, it was said:

"Under 15 O.S. 1941, chapter 11, sec. 448, demand is necessary in order to put the bailee in default. It is a general rule of law that where demand and default are prerequisites to the bringing of an action, the person on whom the duty of demand rests cannot toll the running of the statute of limitations by failure to make such demand. In the case of Purcell Bank & Trust Co. of Purcell et al. v. Byars, 66 Okla. 70, 167 P. 216, this court in the third paragraph of the syllabus said:

" 'Where a demand is required to perfect a cause of action, such demand must be made within a reasonable time, and the party entitled to make demand cannot extend the running of the statutes of limitation by delay in making demand.'

"To the same effect are State ex rel. Estill v. Board of County Commissioners of Pontotoc County, 119 Okla. 215, 249 P. 394, and Oklahoma City Federal Savings & Loan Ass'n v. Swatek, 191 Okla. 400, 130 P. 2d 514."

I think the same rule of law is applicable in the instant case; the latest date upon which the cause of action could have accrued was at the time of final payment to Young, January 25, 1935, nearly seven years prior to the filing of this action; the time within which suit could have been brought was five years (12 O.S. 1941 §95, subs. 1);

the statute was not tolled by plaintiffs' delay in making demand and the judgment of the trial court should be affirmed. To me, this is the only logical conclusion to be reached from the factual situation here presented and is the reasoning adopted in a majority of the jurisdictions (see Purcell Bank & Trust Co. of Purcell et al. v. Byars, supra).

If, however, the facts be viewed in a light most favorable to plaintiffs and the amount due be taken as "money deposited in a bank," etc., as stated in the majority opinion, the same conclusion should be reached. As a deposit, it does not fall within the classification of a checking account but rather in that of a time deposit payable (because of the above statute) at the time of death of the stockholder. Although payable upon the happening of the contingency, it is governed by the same rule as though payable at a definite future date. The rule applicable to such a situation was stated in Gould v. Bank of Independence, 264 Ky. 511, 94 S. W. 2d 991, as follows:

" 'Time loan deposit certificate' due and payable on definite date *held* 'promissory note' against which statute of limitations began running on due date thereof, as regards question whether suit by depositor's administratrix to collect proceeds of certificate was barred."

Going, however, a step further in viewing the matter favorably toward plaintiffs and assuming that the above rule was modified to the extent that a demand and refusal of payment were necessary to start the running of the statute, such demand would have to be made within a reasonable time. The longest period of time fixed as a reasonable time is, as adopted by the Idaho court in the case of Johnston v. Keefer, 48 Idaho 42, 280 P. 324, the period of limitations. Therein, it was said:

"When no time is fixed for making of demand, it will be presumed to have been made in a reasonable time or at expiration of period within which statute would have run upon claim if it

had been due from its date, and statute of limitation is then set in motion."

Under this rule, the instant action would have been barred 10 years (5 years for establishment of presumption of demand and 5 years for running of statute) after the date upon which the claim would otherwise be due—the date of death of stockholder, September 2, 1930.

Granting plaintiffs the further advantage of the rule that such period did not start to run until plaintiffs had the right to make the demand after the happening of the contingency, the date would be fixed as of the time of the decree of distribution, September 25, 1931. This date also is more than ten years prior to the filing of suit and therefore under this theory plaintiffs' action was barred.

The conclusion that the action was barred, reached by either line of reasoning, is unaffected by the assumption of correctness of every other contention made by the plaintiffs, whether actually sustainable or not. Such assumptions, which are questions that need not be here determined, are as follows:

That the cause of action did not accrue ipso facto on September 2, 1930, the time of the stockholder's death;

That the cause of action did not accrue on May 25, 1931, when the administrator demanded payment and delivered a certified copy of his letters and of the order of court authorizing collection;

That the cause of action did not accrue on September 25, 1931, when the probate court decreed distribution of the assets of the estate to plaintiffs;

That Young had no authority to receive payment as administrator on January 28, 1935, after his discharge, although having been theretofore ordered by the probate court to make such collections and necessary preliminary steps to that end had been taken;

That all the facts surrounding Young's actions including plaintiff's failure to take possession of the shares of stock or notify the defendant of the termination of Young's authority did not make Young an ostensible agent of plaintiffs for collection, nor work an equitable estoppel against them to deny his authority;

That demand by plaintiffs, made upon defendant at a time when money was on hand to redeem the stock, was necessary to perfect a cause of action.

If all of these conclusions in plaintiffs' favor be reached, whether correct or not, even then their cause of action is barred by the statute of limitations as hereinabove discussed.

I therefore respectfully dissent.