ROY O. HAWTHORNE and JANE HAWTHORNE

Plaintiffs and Cross-Defendants


vs.


MARTIN WENER and FRANCES WENER

Defendants and Cross-Plaintiffs


Opinion Of The Window Rock District Court


Decided on May 22, 1979

James Jay Mason, Gallup, New Mexico, for Plaintiffs and Cross-Defendants

William P. Battles and Albert R. Vermeire, Fort Defiance, Arizona, for Defendants and Cross-Plaintiffs

McCABE, District Judge

On August 19, 1976, Martin and Frances Wener filed a complaint with this Court seeking to prevent Roy and Jane Hawthorne from interferring with their possession of a house at 203 Shonto Boulevard, St. Michael's Housing Area, Window Rock, Arizona. The complaint alleged that the parties entered into an oral agreement in Gallup, New Mexico for the Weners to purchase the house and for Roy Hawthorne to assist them in obtaining a transfer of the homesite lease. According to the complaint, Hawthorne never assisted the Weners in obtaining the lease. The Weners made all payments due on the mortage.

On August 31, 1976, Roy Hawthorne requested that the Weners vacate the premises.

-62-

Also on August 31, 1976, the Weners filed a Motion for a Temporary Restraining Order to prevent the Hawthornes from removing them during the trial of this matter. This motion was withdrawn on October 20, 1976 when the Hawthornes agreed to allow the Weners to stay in the house pending a final decision of this Court.

The Hawthornes answered the complaint on March 1, 1977 denying that the oral agreement existed as to the ownership of the house and denying that the Weners owned the house. Hawthorne also alleged that since the agreement the Weners complained of was oral, any enforcement of it was barred by the six year Statute of Limitations of the Navajo Nation.

On May 9, 1977, Roy Hawthorne filed a complaint for forcible entry and detainer of the house against the Weners. According to the complaint and the testimony at trial, Hawthorne had made an agreement with the Weners that they could occupy the house as long as they were assisting in the building of Hawthorne's church. In lieu of rent, the Weners were to meet all of the mortgage payments. Apparently, the Weners also paid all back payments due on the mortgage when the acquired they house. An assignment of the homesite lease was obtained in the name of Roy O. and Jane Hawthorne on May 21, 1965 and was consented to by the Chairman of the Navajo Tribal Council six days later.

Mr. Hawthorne admitted that he did not report the Weners' mortgage payments as income on his federal income tax as he would be

required to if the mortgage payments were in lieu of rent. The Weners did report the interest on the mortgage on their own federal tax returns.

According to Hawthorne, the Weners first breached their part of the oral agreement in December of 1972. However, Hawthorne did not send any letter demanding that the Weners vacate the house until 1976.

By order of this Court on June 13, 1977, these two cases were consolidated for trial.

At the conclusion of the plaintiffs' first witness, Mr. Hawthorne, the Weners moved for a (directed) verdict, which was orally denied.

It was and is the belief of this Court that such a motion was not timely. The proper time was presenting motions for directed verdicts is not addressed by the Navajo Rules of Procedure. However, it appears that a majority of the jurisdictions in the United States require motions for directed verdicts to be made at the conclusion of either party's case in chief.

Absent any rule to the contrary, this Court will no longer entertain motions for directed verdicts at any other time.

Both the Hawthornes and the Weners made a great deal of

the fact that no enforcement could be given any oral agreement due to the Statute of Frauds. For this reason, the Weners claim the house as they made all of the payments on the mortgage and are now in possession. The Hawthornes claim possession on the grounds that the homesite lease was assigned to them and it is the only writing indicative of ownership.

In seeking to have the Statute of Frauds apply reliance is made on 7 N.T.C. 204 which states that matters not covered by the Navajo Tribal Code are to be decided on the basis of applicable state and federal law.

While at first glance, this might cause this Court to apply the Statute of Frauds, this Court declines to do so.

First, by its absence from the Navajo Tribal Code, this Court believes that the Navajo Tribal Council has purposely chosen not require contracts to be in writing. To require otherwise might work a great hardship on the Navajo People as they are mostly unaware of legal formalities. Numerous litigation could also result.

This same rationale was applied by our Court of Appeals in In The Matter of the Estate of Chisney Benally, I Nav. R. 219 wherein oral wills were permitted.

Another reason for declining to adopt the Statute of Frauds is the fact that this Court has no desire to see the commercial law of

-65-

the Navajo Nation fragmented into three pieces, depending on the state. The Statutue of Frauds differs from state to state. For example, see ARS 44-101 and NMSA 55-1-206 and 55-2-201.

Finally, this Court is unsure as to whether the Arizona Statute of Frauds or the New Mexico Statute of Frauds should apply.

Therefore, this Court rules that the Statute of Frauds does not apply in the Navajo Nation until such time as it is specifically adopted by the Navajo Tribal Council.

This Court does believe that the cause of action by the Hawthornes against the Weners is barred by the doctrine of laches.

Laches is delay which works a disadvantage to another and causes a change of conditions or relation during the delay which is detrimental. Hillers v. Local Federal Savings & Loan Association, 204 Okl. 615, 232 P.2d 626 at 630 (1951).

The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Morton v. Van Orsdol, 203 Okl. 394, 222 P.2d 520 at 522 (1950).

The bar of laches, unlike the bar of the Statute of Limitations, is determined not merely by lapse of time, but by facts indicating circumstances prejudicial to the defendant, which have arisen

by reason of the delay of the plaintiff in asserting his demand. Naselli v. Millholland, 89 F.Supp. 943 (D.C. D.C., 1950); Munter v. Weil Corset Co., Inc., 261 U.S. 276, 43 S.Ct. 347, 67 L.Ed. 652 (1922).

The defense of laches is one depending to a great extent on the sound judicial discretion of the trial court. State v. Martin, 59 Ariz. 438, 130 P.2d 48 (1942); State ex rel. Crane Co. v. Georke, 191 Okl. 1, 126 P.2d 1005 (1942).

In the opinion of this Court, the Hawthornes' delay of approximately four years in commencing this action did work a disadvantage and change of condition for the Weners in that they continued to make mortgage payments in the belief that they were purchasing the house, to their detriment if the house was not their own. The prejudice to the Weners is a direct result of the inaction by the Hawthornes to clarify the ownership, either legally or otherwise, and it is within the discretion of this Court to disallow the Hawthornes claim of ownership for that reason.

Therefore, this Court concludes that the Hawthornes' claim is barred by the doctrine of laches.

On the other hand, the Weners acted immediately to redress their rights upon the actions of the Hawthornes to regain the house.

A close examination of the actions of the Hawthornes reveals

little that they have done consistent with ownership. They made no repairs, had no permanent keys and made no inspections. They did not report the mortgage paid by the Weners on the federal income tax returns as income as they should have done if they were merely renting the house. In fact, the Hawthornes never expended one dollar of their own money on the house. The only indication presented to this Court that the Hawthornes had any interest in the house at all was the assignment of the lease from Adeline Draper to the Hawthornes. According to the oral agreement between the parties, the Hawthornes were supposed to assist the Weners in obtaining the assignment, not take the assignment in their own names. The Hawthornes failure to do so resulted in the homesite lease being in the wrong names.

From the evidence presented, this Court believes that the Weners always believed they were purchasing the house and that they had an oral agreement with the Hawthornes to assist them in the purchase and the assignment of the lease. Any claim the Hawthornes might have had is barred by the doctrine of laches. Because the Hawthornes have never expended any money on the house in question, they have suffered no monetary damages.

Therefore, this Court orders that sole possession and ownership of the house at 203 Shonto Boulevard, St. Michael's Housing Area, Window Rock, Arizona belongs to Martin and Frances Wener.

Roy and Jane Hawthorne are ordered to assign the homesite lease in their possession to Martin and Frances Wener within thirty days

of the date of this opinion.

All parties are to bear their own costs.

So ordered.